The People *ex rel.* Andrew J. Yates, *vs.* The Canal Board of the State of New-York.

A mandamus will not be issued, directed to the Canal Board, commanding them to act, and to approve or disapprove of contracts awarded to, and made with an individual by the board of canal commissioners, the state engineer and surveyor, and the division engineer, for the performance of work upon the canals, in pursuance of the act of July 10, 1851.

A mandamus will not be issued on the application of an individual, to any officer of the government, commanding him to make a contract, entered into with that individual by public officers, binding upon the state.

THIS was a motion by the People, on the relation of Andrew J. Yates, for a peremptory mandamus, to be directed to the Canal Board, commanding them to act, and approve or disapprove of the contracts awarded to, and made with, the relator, as stated in the affidavit on which the motion was founded; and to approve or disapprove of the terms upon which, and the manner in which, the board of canal commissioners, state engineer and surveyor and division engineer had contracted with the said Andrew J. Yates to do the work in the said contracts specified; or for such other rule or order as the court should see fit to grant.

The affidavit of the relator, on which the motion was founded, alledged that the canal commissioners of the state of New-York, together with the state engineer and surveyor, and the several division engineers of said state, on or about the 17th day of October, 1851, caused to be published in the state paper, and in divers other public newspapers in the state, an advertisement in the words following:

" Completion of the Genesee Valley and the Black river canal and of the enlargement of the Erie and the locks of the Oswego canals and Delta feeder, and improvement of the Black river.

In pursuance of a resolution of the Canal Board, notice is hereby given that sealed proposals will be received by the undersigned until noon of the 18th day of November next, at the offices of the canal commissioners in the cities of Albany, Syracuse and Buffalo, for the work on the respective divisions for, doing all the work not under contract, required to complete the above canals and improvements.

The line is now ready for inspection, and a full description of the work to be done, with maps, plans of structures, quantities of materials, specifications and blank contracts will be ready for examination at the offices of the engineers in Albany, Rome, Syracuse, Rochester, Cuba and Buffalo, on and after the 28th instant.

Contractors' names must be written out in full and their post office address written below.

Each proposal to be indorsed 'Proposals for public work,' naming the canal or the division of the Erie canal on which the work proposed for is located.

Proposals will be opened in public by the president of the Canal Board during the session of the board to be held in the city of Albany on the 20th day of November next.

Every proposal must be accompanied by a written guaranty signed by one or more responsible persons to be approved by the Canal Board, to the effect that he or they undertake that the person or persons proposing will immediately after being notified personally or through the post office that his or their proposals are accepted, enter into an obligation with good and sufficient sureties to perform the work proposed for—also a bond for the payment of laborers' wages.

Propositions will be received for any single section, and all propositions must be for a sum certain as to the price to be paid or received, and no proposition not thus definite will be received or acted on. No more than one proposition will be received from any person or persons for the same work.

The prices in the contracts will be considered as including the expense of furnishing all the materials and performing all the work according to the plans, specifications and notices that will be exhibited.

The persons to whom the work may be allotted will be required to enter into contract immediately, and to progress with the work in such manner as to insure the completion of the same by the time to be specified in the contract. Contractors are notified that it will occupy several days to canvass the propositions

as required by law, and that they will be duly notified through the public prints of the allotments when made.

Albany, October 16, 1851."

This advertisement was signed by the canal commissioners, the state engineer, and the division engineers.

The relator further alledged that after the publication of said advertisement and before the 18th day of November, 1851, he proposed in the manner and form therein described for sundry work, and among other to furnish all the material, perform all the labor, and to contract and furnish the bridge abutments on the several sections from and including No. 50 to and including No. 62 of said canal; and that after the time limited for the reception of proposals in and by the said advertisement the Canal Board, at a meeting for the purpose duly held at the State Hall in the city of Albany, proceeded to open and examine the several proposals that had been submitted and received for work, and on the 22d of December the said Canal Board adopted a resolution in the words following:

"Resolved that the board of canal commissioners, together with the state engineer and surveyor, and the division engineer having charge of that portion of the canal where the work is to be let, be and are hereby directed to contract for the completion of the Erie canal enlargement and the Genesee Valley and Black river canals, and the enlargement of the locks on the Oswego canal·*in the manner* heretofore directed and approved by the Canal Board, and upon the terms hereinafter directed. The contracts for said work shall be awarded to such parties as shall propose to perform the work on terms most safe and advantageous to the state, having due regard to price, the ability of the parties, and the security offered for the performance thereof. And the said board is hereby directed to contract with the lowest bidder, when, in the judgment of said board, said bidder has the ability to perform the contract and give satisfactory security for the performance of the same, and will in the judgment of said board perform his contract within the time provided in chapter 485, Laws of 1851. But in case the lowest bidder shall not in the opinion of said board be entitled to a contract on the

terms hereinbefore expressed, in that case the next lowest bidder shall be preferred who in the judgment of said board shall be entitled to it on the terms before expressed. And the said board is hereby directed to execute said contracts before the 1st day of January next; and in no case shall the said board award to any person or persons more than $200,000 worth of work when bids are made for the same work by any other person or persons equally responsible, except in cases where work exceeding that amount cannot be advantageously directed."

The relator further alledged, that upon the adoption of said resolution the board of canal commissioners, together with the state engineer and surveyor, and the division engineer having charge of that portion of the canal where the work was to be let, awarded contracts to various persons for the work mentioned in the advertisement before set forth, and among others awarded to the relator the contract for constructing and finishing a waste weir on section No. 56, as the same was located for the enlargement of the Erie canal, and also the contract for constructing and finishing the farm bridge abutments on the several sections from and including No. 46 to and including No. 56 as the same were located for the enlargement of the Erie canal; as by reference to the said contracts, duplicates whereof duly executed by the deponent, were in the hands of the canal commissioners and also in the office of the auditor of the canal department, would more fully appear.

The relator further alledged that having been informed, and verily believing such information to be true, that the Canal Board had not since the award of said contracts to him in any way approved of the terms upon which or the manner in which the canal commissioners, state engineer and surveyor, and the division engineer having charge of that portion of the canal where the said work so let had contracted for the performance of the work in said contract mentioned, the relator did afterwards and on or about the 22d day of January, 1852, present his application in writing to the Canal Board, therein stating that he had proposed for work at the late letting of work upon the Erie canal enlargement, and that the work above mentioned had been

awarded to him as also hereinafter stated, and setting forth that he had received notice from Mr. Goodsell, one of the engineers, that a certain part of the work so awarded to him, the deponent, should be constructed before the opening of navigation, and that the deponent deemed it unsafe to commence said work before the terms of his said contracts were approved by the Canal Board; and praying in substance that said board would examine the prices established in said contracts and approve or disapprove of the same; but that said board had hitherto wholly neglected so to do, and that said contracts had not yet, to the deponent's knowledge or belief, been either approved or disapproved of by said board. That on or about the 30th day of January, 1852, he, the deponent, received from J. P. Goodsell, resident engineer on the eastern division of the Erie canal, a letter of which the following is a copy:

"Engineer's Office, Albany, January 30, 1852.

Andrew J. Yates, contractor; Sir: You are herewith furnished a bill of timber for farm bridge abutments foundation on sec. 46 to 56 inclusive, also for waste weir on sec. No. 56. In the prosecution of your work you must distinctly understand that a resolution has been before the Canal Board disapproving the award made to some of the contracts recently let, and you must assume the responsibility of further action on the resolution referred to. The plans for abutments, and the necessary information, staking, &c. you may require, will be furnished you at the engineer's office at Amsterdam.          Very truly yours,

J. P. Goodsell, resident engineer."

The deponent further alledged, that he was advised by his counsel and believed, that in order to render the contracts so made with him valid or binding, it was necessary that the Canal Board should approve of the terms upon which, and the manner in which, the said canal commissioners, state engineer and surveyor, and division engineer, had contracted with him to do the work mentioned and described in the contracts above mentioned.

It was admitted by the counsel for the defendants that the Canal Board had never directed or approved of the canal contracts awarded under the act of 1851, in any other respect than

by the resolution of the 22d December, mentioned in the affidavit of the relator ; that said board had since said contracts were made, doubted its power to approve or disapprove of the same, and for that reason had declined to act in relation thereto ; and that the awards and contracts made had never been reported to the Canal Board by the board making the same.

In opposition to the motion, the defendants offered an affidavit made by Christopher Morgan, late secretary of state, Charles Cook, late canal commissioner, and John C. Mather and Frederick Follett, present canal commissioners, in which they alledged that there were about three thousand proposals for doing the work of the state on the Erie canal enlargement, and the Genesee Valley and Black river canals, and the enlargement of the locks on the Oswego canal, submitted to the Canal Board, pursuant to the notice set forth in the affidavit of Andrew J. Yates on which the present motion was founded, and were opened as mentioned in said notice for examination and consideration, and the same were fully and carefully discussed and considered by and before the Canal Board for several weeks prior to the passage·of the resolution of the said Canal Board of the 22d December, 1851, set forth in the said affidavit of Yates.   That after the passage of the said resolution the canal commissioners, state engineer and surveyor, and the respective division engineers entered upon the discharge of the duty imposed on them, and did contract with many and various persons for the completion of the Erie canal enlargement, and the Genesee Valley and Black river canals, and the enlargement of the locks on the Oswego canal, pursuant to said resolution, and that after the execution and delivery of the contracts so made and entered into, the said canal commissioners and state engineer and surveyor, and the respective division engineers, made a statement in writing in detail, and with particularity, to the Canal Board, every member being present, of the terms and manner in which they had so contracted for said work, and had discharged the duty devolved on them ; and that the statement so made was discussed and considered by the Canal Board, and nearly every individual composing the Canal Board expressed his satisfaction with and approval of the

terms and manner in which the contracts had been made, and that not more than one or two members of the said Canal Board expressed any dissatisfaction with the terms or manner in which the said contracts had been made and executed.

*A. C. Paige, J. C. Spencer* and *N. Hill, Jun.* for the relator.

*L. S. Chatfield,* (attorney general,) and *J. A. Spencer,* for the defendants.

CADY, J. What is the object of this motion? It is to compel the Canal Board to approve of the contracts set out in the relator's affidavit, and thereby give them validity against the people of the state of New-York. Neither the Canal Board nor the individual members of that board, have any interest in this matter. That board was, by the constitution, organized as one, and a very important department of the government of the state. The importance of that department of the government may in some degree be judged of from the facts connected with, although not appearing upon the face of the papers in, this matter. It was stated upon the argument and not disputed by any one, that more than three thousand proposals were made in pursuance of the advertisement above set out; that more than three hundred contracts had been made, and a certificate of the attorney general was read, showing that the Canal Board had not, by any resolution entered in the minutes of the board, approved of any of the contracts, otherwise than by the resolution of the board set out in the affidavit upon which the motion is made.

I may, I think, assume, without going too far out of the record, or doing injustice to any one, that these proposals were made for doing all the work, and furnishing all the materials to complete all the canals mentioned in the advertisement, and that the three hundred and odd contracts embrace all that work and materials; and it may be allowable to look into chapter 485 of the laws of 1851 to form an estimate of the amount to be paid to satisfy the terms of those contracts. In the 12th section of that chapter there is this proviso: " Provided, however, that the con-

The People *v.* The Canal Board.

tracts for the completion of the whole work on such canals, according to the plans and specifications adopted by the Canal Board, shall not exceed to the amount of ten per cent the sum of $10,508,141 ;" or in other words, that all the contracts should not exceed $11,558,955.

It will not be unreasonable to assume that the contracts which have been made, but are, as the relator claims, invalid, amount in the aggregate to at least $9,000,000. Although the relator does not ask for a mandamus to compel the Canal Board to approve of all those contracts, yet if he be entitled to a mandamus, every other person having a like contract will probably be entitled to the same remedy. The affidavit of the relator shows that he asks for a mandamus on the assumption that the contracts which he has are invalid; that the people are not yet bound by those contracts. Whether this assumption be well founded, I do not propose to discuss or decide; but supposing it to be well founded, has the relator made out a fit and proper case for a mandamus? Although the motion is in form against the Canal Board, it is in effect against the people of the state. The relator wants nothing of the Canal Board but to approve of contracts, and thereby bind the people of the state.

The issuing of a mandamus is in effect the commencement of an action. (1 *P. Wms.* 351.) In *Kendall* v. *United States*, (12 *Peters*, 615,) Mr. Justice Thompson, when speaking of the proceedings on a mandamus, said: " It is an action or suit brought in a court of justice, asserting a right, and is prosecuted according to the forms of judicial proceedings." The motion of the relator, then, in effect, is for leave to commence an action, in form, against the Canal Board, but in substance against the state, to compel the Canal Board to give vitality to certain contracts as against the people of the state. What authority has the court to authorize an action to be commenced against the state? The state no more than the United States is suable.

In *Reeside* v. *Walker, Secretary of the Treasury*, (11 *Howard's Rep. U. S.* 272,) an application was made to the circuit court of the United States for the district of Columbia, for a mandamus against the secretary of the treasury, to compel him

to make certain entries to the credit of James Reeside, under proper date, upon the books of the treasury department, and then to pay the amount of such credits to his executrix, the complainant. The circuit court denied the motion, and the case was moved by writ of error to the supreme court of the United States, and Mr. Justice Woodbury delivered the opinion of that court, some parts of which may be applied to this case. At page 289, he said, "Though this application is in form against the person who was secretary of the treasury, November 4th, 1848, yet it is to affect the interests and liabilities alledged by the plaintiff herself to exist on the part of the United States." It has in this case already been said that *the motion for a mandamus*, although in form against the Canal Board, is to affect in a very serious manner the interests and liabilities of the state.

Again, Mr. Justice Woodbury said: "Now under these circumstances, though a mandamus may sometimes lie against a ministerial officer to do some ministerial act connected with the liabilities of the government, yet it must be when the government itself is *liable*, and the officer himself has improperly refused to act. It must even then be in case of *clear* and not *doubtful* right." The relator makes a motion on the assumption that the government *itself* is not *liable*: his only object is to make the government liable.

In another part of the opinion, Mr. Justice Woodbury said: "It is well settled, too, that no action of any kind can be sustained against the government itself, for any supposed debt, unless by its own consent, under some special statute allowing it." There is a precedent for such a statute, Laws of 1825, ch. 275, § 1, and of the mandamus allowed in virtue thereof. It has long been regarded as a principle of government, that private property could not be taken for public use without just compensation. The canals of the state could not have been made without taking property, and to provide for making such just compensation, canal appraisers were appointed, whose duty it was to appraise all damages to individuals by the making of any of the canals. A Mr. Jennings, who at the time and before the making of the Erie canal, claiming to own various hydraulic works standing on the

margin of the Chittenango creek—that creek, by order of the canal commissioners, was diverted from its bed, and Mr. Jennings's hydraulic works greatly injured. He applied to the canal appraisers to appraise his damages; they refused, because they believed the creek belonged to the state. He applied to the supreme court for a mandamus to compel the canal appraisers to appraise the damages which he had sustained. (6 *Cowen*, 518.) The writ was granted in the name of the people of the state of New-York, commanding the canal appraisers to appraise the damages sustained by Mr. Jennings. That was such a case as was mentioned by Mr. Justice Woodbury, in which the government had made itself liable for the damages by a special statute—had appointed its own officers to appraise the damages, and described the officers who should pay the damages when appraised. There was in that case no apparent incongruity in issuing a mandamus, and in the name of the people, commanding the canal appraisers to appraise the damages which an individual had sustained by means of his property being taken and applied to the use of the state. His right was *clear*, and the *liability* of the state to pay established by statute. But not so in the case under consideration. The state has not as yet made itself *liable* to the relator to execute or deliver by its officers to him any contract whatever; and I have been unable to find any case in which, on the application of an individual, a mandamus has been issued to any officer of the government, commanding him to make a contract with that individual binding on the state. If no action can be commenced and maintained against the state to compel the performance of a contract without a previous statute authorizing such action, it would seem to follow that no action can be maintained against an officer of the state to compel him to make or complete a contract on behalf of the state. I ought not to express or put entire confidence in this view of the case, as it was not discussed by the learned counsel for the respective parties on the argument.

There are other views of this case, which, in my judgment, render the relator's rights to a remedy by mandamus doubtful. It was taken for granted, upon the argument, that the duty

which the relator called upon the Canal Board to perform, was judicial, was discretionary. In the opinion of the supreme court of the United States, as declared by Justice Woodbury, and to which I have already referred, he, at page 290, said : " Again, a mandamus, as before intimated, is only to compel the performance of some ministerial, as well as legal duty." " When the duty is not strictly ministerial, but involves discretion and judgment, like the general doings of a head of a department, as was the respondent here, and as was the case here, no mandamus lies." This difficulty did not escape the notice of the learned counsel for the relator, and in the notice of the motion the Canal Board was informed that a mandamus would be asked for, commanding them to proceed and approve or disapprove of the contracts. Why put the notice in the alternative ? Because no court would order a mandamus to issue to an officer of the government, commanding him to do an act in relation to which he had a discretion, to do or not to do it, as he pleased. That was the discretion vested in the Canal Board, as I understand the arguments on the part of the relator. I can discover no use in the alternative part in the notice, unless the relator can, by possibility, be benefited by a formal resolution entered in the minutes of the Canal Board, disapproving the contracts mentioned in the relator's affidavit. If he could have that resolution reviewed and reversed, upon a writ of error, certiorari, or appeal, then there might be a good reason for a mandamus in the alternative ; but unless such resolutions could be reviewed, the alternative is useless, and ought to be struck out ; and if struck out, the writ which would then be asked for, could not legally be granted.

Various cases were referred to, on the argument, to show that this was a proper case for a mandamus, to put the Canal Board in motion. In *The King* v. *The Bishop of Lincoln*, (2 *Durn. & East*, 338,) the bishop had appellate jurisdiction, in certain cases, and a mandamus was allowed, to compel him to receive, hear and determine an appeal. The party appealing had a legal right to appeal, and it was the bishop's duty to receive, hear and determine the appeal ; but it does not follow from that case,

The People *v.* The Canal Board.

that the Canal Board is in this case bound to enter a formal resolution to approve or disapprove of the relator's contracts. *The King* v. *The Bishop of Ely*, (5 *Durn. & East*, 475,) was a case of a similar character. *Commonwealth* v. *Judges of Common Pleas*, (3 *Binney*, 273,) shows that a mandamus cannot go to an inferior court to compel them to make any particular decision, but merely to decide ; and numerous cases may be found in which the same rule is declared. When an action is pending in an inferior court and ready. jor judgment, each party has a legal right to insist that a judgment shall be given in the cause. Why ? Because, if given in his favor, he has all he asks for ; and if the judgment be against him, he can, if it be erroneous, have it reviewed and reversed. But that reason does not apply to this case, unless the relator can have the decision of the Canal Board reviewed, in case it be against him, which I am of opinion he cannot do.

Although the attorney general declined to argue the case, his brief was handed to the court. The first point in which was, " The relator does not show a *clear* right. This is indispensable on motion for a mandamus. *(The People* v. *The Corporation of Brooklyn*, 1 *Wend.* 318.)" I am inclined to the opinion that there is much force in this objection. In the case cited, Savage, Ch. J. in giving the opinion of the court, said, at page 324 : " There must be a right, therefore, without any other adequate remedy ; or a mandamus does not issue, and I incline to the opinion that the right must be complete, not inchoate. The cases cited in which this court has compelled supervisors to raise money assessed to individuals for damages on opening roads, (19 *John.* 272, 5 *Cowen*, 292,) are cases where the right of the relators was complete, by the assessment of the jury and the justices, and the supervisors had no discretion about it." And the same chief justice, in *The People* v. *The Supervisors of Columbia County*, (10 *Wend.* 366,) in giving the opinion of the court, on a motion for a mandamus, said : " The party asking for a mandamus must have a *clear legal right*, and no other appropriate specific remedy." In *The People* v. *The Judges of Columbia Common Pleas*, (3 *How. Pr. Rep.* 32,) Bronson,

Ch. J. said: "The alternative writ is defective. It does not show a title in the relators." In *The People* v. *The Super-visors of Albany*, (12 *John.* 414,) Spencer, J. gave the opinion of the court, on a motion for peremptory mandamus, and said: "If the party making the application has a legal right, and no other legal remedy, the writ generally goes." And he then mentioned a case in which an application had been made for a mandamus to compel commissioners of highways to lay out a public highway, which was opposed, on the ground that the commissioners had a discretion to lay it out or not, as they saw fit; and that was not a case for a mandamus, the applicant having *no legal or precise right.*

In *Reeside* v. *Walker*, already referred to, Mr. Justice Woodbury, when speaking of cases in which a mandamus might lie against some ministerial officer, to do some ministerial act connected with the liabilities of the government, adds: "It must even then be a case of *clear*, and not doubtful right." In the matter of *The Life and Fire Insurance Company of New-York* v. *The Heirs of Nicholas Wilson*, (8 *Peters*, 291,) Mr. Justice McLean delivered the opinion of the court, and at page 302, said: "The writ of mandamus is subject to the legal and equitable discretion of the court, and it ought not to be issued in cases of *doubtful right.*" In that case the district judge of the eastern district of Louisiana, refused to sign a judgment roll of a judgment rendered by his predecessors; a mandamus was applied for and granted. Unless the record was signed, the judgment could not be enforced, nor reversed for error. Both parties had a clear and complete right to have the judgment signed. I think, on a careful examination of all the cases, it will be found that no individual can seek a remedy for a private wrong by a mandamus, unless his right to what he asks for in the writ is complete. It may then be asked, what right has the relator to compel the Canal Board to approve of the contracts mentioned in his affidavit? He assumes, as the foundation of his motion, that the contracts are void; that they are inchoate. One of his learned counsel said: "That every letting by the minor board must be approved by the Canal Board, before it

has vitality and becomes a contract." Be it so; then how does the relator show a "complete right," a "clear right," not a "doubtful right," to demand of the Canal Board to approve or disapprove of his void contracts?

I have shown that he cannot be benefited by the Canal Board disapproving of his contracts; then how has he acquired a complete right to demand that the Canal Board shall approve of them? He saw the advertisement published by order of the Canal Board, and hoping to obtain a number of contracts, he made various proposals. Did the fact that he made various proposals, give him a complete right to demand of the Canal Board, by mandamus, that they should examine his proposals and give him contracts? Thousands of others made proposals, and would it not open a frightful source of litigation to hold that every one who made proposals, thereby acquired a complete right to call on the Canal Board, by mandamus, to examine his proposals and accept or reject them; and if rejected, that he can have that decision reviewed upon a writ of error, certiorari or appeal? And who is to pay the expense of this endless litigation on the part of the *Canal Board?* If the state must pay the expenses, it would be well to have a fund of some millions at once created for that purpose. But, it may be said that the relator has not only made proposals, but the canal commissioners, the state engineer and surveyor, and the division engineer, have awarded *contracts* to him, and have in the name of the people of the state of New-York, executed and delivered the contracts to him; and that he has signed, sealed and delivered the counterpart of the contracts, which have been deposited in the proper public office.

This would seem to give color to his claim, and show that his right does not rest solely on the fact that he made proposals; but he, by his counsel, insists that those contracts have no vitality; that "at present they are inchoate, and are no more valid than the draft of one by a scrivener," &c.; that the award of the contracts to the relator by the canal commissioners, state engineer and surveyor, and division engineer, was without legal authority and void. If it be true that the contracts were

awarded to the relator without authority; if they are inchoate, and no more valid contracts than the draft of one by a scrivener, then he has nothing on which to rest his claim but his proposals; for it cannot be claimed that the subsequent void contracts have added much to the force of his proposals; and can it be, that his having made proposals, has given him a complete right to commence an action by mandamus, in form against the Canal Board; but, in substance, against the state, to compel its officers to approve of, or in other words, make contracts with him binding on the state!

Suppose all the canals in the state had belonged to one individual, and he had published a notice similar in substance to the one set out in the relator's affidavit, that he would receive proposals for completing all the canals until the 18th of November, 1851; and he had in his advertisement promised that he would award the contracts to such parties as should, in his judgment, propose to perform the work on terms most safe and advantageous to him, having due regard to price, the ability of the parties, and security offered for the performance thereof; would each person who should, in answer to such an advertisement, make a proposal to do work on any of the canals, thereby acquire a *legal right* to call on the advertiser and insist that he should examine, and either accept or reject, his proposals? And if his proposals were rejected, could he then commence and maintain an action against the advertiser, in case he could satisfy a jury that he proposed to perform the work on terms most safe and advantageous to the advertiser, having due regard to price, the ability of the parties and security offered for the performance thereof? If a party would not, in such a case, acquire any *legal* right which could be enforced against the advertiser, can the relator have any such rights as against the state, because he made proposals? Suppose the person making proposals in pursuance of the advertisement of an individual, should afterward call upon the advertiser and say to him, "I read your advertisement, and according to its terms, have made you several proposals, and now I demand of you to accept or reject my proposals;" would not the advertiser have a right to answer the

demand, by saying " I have your proposals, sir; you are not yet bound by them; and as soon as I shall be satisfied that my interest will be promoted by accepting your proposals, I will give you notice, and then, if you please, we will make a contract." Would the person thus answered have a complete right to commence an action to compel the advertiser to enter into a contract according to the proposals? If not, the relator in this case has shown no right to commence an action by mandamus against the Canal Board, to compel them to make a contract between him and the state.

In answer to this objection, it has been said on the part of the relator, " As the Canal Board have a judicial discretion to exercise, the mandamus can only command them to proceed to a determination. The relator has a right to this determination. He cannot be required to proceed and fulfill an incomplete contract, subject to the hazard of a subsequent disapproval by the Canal Board." That is undoubtedly true. If the contracts be incomplete, and the approval of the Canal Board be necessary to give them effect, and they have refused on reasonable request to give that approval, the relator is at liberty to abandon the contract as soon as he pleases. He is not bound by the contracts until the people are bound. On the part of the relator, it has been said that there are cases in which a relator who asks for a mandamus, need not have a legal right to demand to have the thing done, which he asks for in his writ; but I have not been so fortunate as to find any such case.

The remedy given by a mandamus, is a legal remedy, (10 *Wend.* 393,) and no man can have that remedy unless he has a legal right to demand what is asked for in his writ. If a party wishes to compel a court to give judgment, he must show a legal right to demand that judgment shall be given; if he wishes to compel a board of supervisors to audit and pay an account, he must show that he has an account which the supervisors are bound to audit, and allow him something. How much, is, in many cases, left to the discretion of the supervisors. (*The People* v. *Supervisors of Albany,* 12 *Wend.* 257. *The People* v. *The Supervisors of the County of Kings,* 7 *Id.* 530.) In

some cases the supervisors have no discretion as to the sum to be allowed. (5 *Cowen*, 436. 10 *Wend.* 363.) The counsel for the relator have put his right to the mandamus asked for upon very broad ground, to wit. that he, "as a citizen of the state, has a right to a mandamus." The question is a matter of public right. (*The People* v. *Collins*, 19 *Wend.* 65.) If the relator's right to a mandamus can be maintained on this ground, then every man, twenty-one years of age, who is a citizen of the state, may, upon asking for it, have a mandamus against the Canal Board; and more money would be wasted in litigation than is necessary to complete all the canals in the state. If, by the law, as it now is, the Canal Board be exposed to be thus buried under a million of mandamuses, and the treasury of the state exhausted by the payment of costs, the legislature ought, before the members sleep, to alter the law as to mandamuses. I am, however, inclined to believe that the relator has not, merely because he is a citizen of the state, a right to the mandamus for what he asks.

The case of *The People* v. *Collins*, may be distinguished from the one now under consideration. By an act of the legislature, commissioners were appointed to lay out a road in the county of Chenango; and by the same act, it was made the duty of the commissioners of highways of each of the towns through which the road should be laid, to cause the said road to be opened and worked in their respective towns.

The commissioners of one of the towns through which the road was laid, refused to open it, and a mandamus was applied for and granted to compel them to open the road, as the statute had made it their duty to do. They had no discretion in relation to it. They were bound by statute to open the road, and the court said : "The power of this court to grant a mandamus at the suit of the people, to compel the commissioners of highways to perform their duty has often been exerted and cannot be questioned." "In such cases the wrongful refusal of the officers to act, is no more the concern of one citizen than another, like many other public offenses. It is at least the *right* if not the duty of every citizen, to interfere and see that a public

The People *v*. The Canal Board.

offense be properly pursued and punished, and that a public grievance be remedied." In that case a mandamus was granted, although the relators had no other interest in the matter than that a public road should be opened. The question in that case was, whether any citizen of the state might ask for a mandamus to compel the commissioners of highways to open a road when the legislature had made it their duty so to do. In that case it was not sought to compel any one to make contracts for the purpose of binding the state. In what sense can it be said in this case, as it was in that, to be "a matter of mere public right," in which every citizen had an equal interest and a legal right to interfere? Is every citizen of the state equally interested with the relator in having the contracts in his hands made obligatory upon the state?

It may be said, and truly said, that every citizen of the state is interested in having the canals completed, as much so as in having a highway opened; but I do not perceive how it follows that every citizen has a legal right to a mandamus to compel the Canal Board to approve or disapprove of each and every act which the canal commissioners, the state engineer and surveyor, and a division engineer have made in the name of the people, with individuals. One citizen may suppose that the interest of the state would be advanced by giving immediate effect to all these contracts; another citizen, equally patriotic and wise, may believe that it is the imperious duty of the Canal Board to disapprove of all the contracts, and each of them may at the same moment be moving the same court, or different courts, one for a mandamus for the purpose of compelling the Canal Board to approve of the contracts, and the other with a view of procuring a disapproval of the contracts.

I am not prepared to admit that the relator has, because he is a citizen of the state, a legal right to the mandamus asked for; nor am I prepared to admit that if any state officer omits a public duty, each citizen has a right to put him in motion by a mandamus. By 1 *R. S.* 407, § 52, it is made the duty of the comptroller, when a tax has remained unpaid for two years from the first day of May following the year in which the same was

assessed, to proceed to advertise and sell such lands. A strict compliance with that law would require a sale of lands for taxes every year; but has each citizen of the state now a *legal* right to demand that a mandamus be issued commanding the comptroller to proceed and sell lands for the unpaid taxes which were assessed in the year 1848? By the 2d section of chapter 485 of the laws of 1851, it is made the duty of the comptroller to cause to be prepared certain certificates; if he neglects that duty, will each citizen of the state have a legal right to a mandamus to compel the comptroller to perform it?

If the views I have already taken of this case be unsound and fallacious—if a mandamus may rightfully issue against the Canal Board, to compel that board to approve of, and thereby give vitality to contracts against the state—if a formal disapproval by that board of the contracts mentioned in the relator's affidavit, could be reviewed and reversed upon a writ of error, certiorari or appeal; if the relator has shown such a legal right, as would justify the granting of the writ asked for, there is another question to be considered.

Is this a case in which a mandamus ought to be granted? In *Ex parte Fleming,* (4 *Hill,* 581,) Cowen, J. in delivering the opinion of the court, said: "The mandamus is a prerogative writ which we have the power to issue or withhold, according to our discretion." And in *Van Rensselaer* v. *The Sheriff of Albany,* Savage, Ch. J., said: "The court may exercise a discretionary power, as well in granting as in refusing a mandamus; as when the end of it is merely a private right, and when the granting of it would be attended with manifest hardships and difficulties.

There are, as has already been stated, more than three hundred contracts, not one of which, as the relator insists, has been approved of by the Canal Board so as to make it a contract on the part of the state. Some of the contracts, as was taken for granted on the argument, severally exceed $200,000 in amount, and the aggregate amount of all the contracts probably exceeds $9,000,000.

Some of the contractors, no doubt, have entire confidence in

The People *v.* The Canal Board.

the validity of the contracts, and are at work under them. Other contractors may have doubts, and others, like the relator, regard the contracts as utterly void; and there can be no doubt but that many of the contractors who have confidence in the validity of their contracts, deem them highly advantageous, and never will surrender that confidence unless compelled to by an act of legislation. These conflicting opinions are injurious to the contractors and the great interests of the state; but can it be supposed that the granting of a mandamus commanding the Canal Board to approve or disapprove of the contracts in the hands of the relator would at once satisfy every contractor that his contract is void! Suppose it would have that effect. What then? Every man who made a proposal, and can make himself believe that he "proposed to perform the work on terms most safe and advantageous to the state, having due regard to price, the ability of the parties, and the security offered for the performance thereof," might apply for a mandamus commanding the Canal Board to award to him a contract, or *refuse to do so.* Suppose the Canal Board should, in obedience to the mandamus, award the contract to him; he then goes with that award to the canal commissioners, the state engineer and division engineer, and demands a contract; can they answer him by saying, we have already executed and delivered a contract for this same work to your neighbor, John Doe, and then the person to whom the Canal Board have awarded the contract must come back to the court for a mandamus to compel the canal commissioners, the state engineer and division engineer to execute a contract to him. They make a return to the writ, and he must be fortunate if he gets a judgment before the first day of May, 1854; and by the statute the contracts must require the jobs to be completed on or before that day.

If the various proposals which have been made under chapter 485 of the laws of 1851, and the contracts which have been made by the canal commissioners, the state engineer and surveyor, and a division engineer, are to be the subjects of litigation, the work cannot be completed within the time limited by that statute.

In the matter of Coates.

The delay in the completion of a single job on the Erie canal may deprive the state for years of the increased revenue which is anticipated from the enlargement of that canal. The legislature can, but no court has the power to prevent· this ruinous delay and litigation; and I am persuaded that to grant the mandamus asked for in this case would lead to litigation seriously injurious to the best interests of the state and not beneficial ·to the parties. I shall, therefore, deny the motion, with ten dollars costs.

[MONTGOMERY SPECIAL TERM, February 16, 1852. *Cady,* Justice.]