The People ex rel. Frost *v.* Fay.

THE PEOPLE ex rel. HENRY FROST *v.* JOHN D. FAY and others, Canal Commissioners.

(SPECIAL TERM, ALBANY COUNTY, APRIL, 1871.)

The constitutional provision (Art. 7, § 3), that "all contracts for work or materials on any canal shall be made with the person who shall offer to do or provide the same at the lowest price, with adequate security for their performance," is, it seems, to be applied according to its spirit, and not literally.

A discretionary power is vested in the officers authorized to award the contract to determine who is "the lowest bidder," and what is "adequate security."

Where the canal commissioners have received bids and awarded work to the lowest bidder, the award is a rejection of the bids or proposals of all other bidders; and they are not then authorized by law to let the same work to the next lowest bidder, although the latter be willing to accept the award.

Where the commissioners advertised for proposals for several different pieces of work, and awarded the same to the lowest bidder, who neglected within the prescribed time, to enter into contracts, and then awarded the same work to the relator, the next lowest bidder, who notified them of his acceptance, but the commissioners afterward refused, upon request, to enter into a contract, and readvertised, and thereupon relet the work to another person whose aggregate bids were less than the aggregate of the relator's bids, upon which the award to him had been made, — *Held*, that the award to the relator was but a voluntary agreement between the commissioners and the relator, made, on the part of the former, in opposition to the provisions of the Constitution and of the statute; and that a mandamus would not lie against them to compel an execution of a contract pursuant to such award.

The writ of mandamus is not a writ of right, but rests in the discretion of the court, and should issue only where the duty of the defendant and the rights of· the relator are clear.

Accordingly, *held*, further, that the right of the commissioners to enter into the contracts awarded being doubtful, the writ should for that reason be denied.

ON demurrer to return to alternative mandamus.

*Matthew Hale*, for the relator.

*Amasa J. Parker*, for the defendants.

LEARNED, J.    On the application of the relator, an alternative mandamus was issued in this proceeding, December 13,

The People ex rel. Frost *v.* Fay.

1870, requiring the defendants to make and enter into a contract or contracts with the relator for the construction of sections 1, 2, 3, 4, of the Fish Creek feeder, in accordance with his proposal, dated November 16, 1869, and at the price therein specified, or to show cause to the contrary.

The defendants now make return, and, for cause why they should not make these contracts, they set forth the proceedings relative to the letting, as hereinafter stated, and the relator demurs.

On the 21st of October, 1869, the canal commissioners advertised in due form for proposals for sections 1, 2, 3 and 4 of the Fish Creek feeder, to be received November 17. In pursuance thereof, the relator presented proposals, which were in all respects regular. On the opening, there were found to be over twenty proposals for each section.

The proposers, commencing with the lowest, were as follows:

*Section one* — 1st, Gere; 2d, Baker; 3d, Denison; 4th, Frost, the relator.

*Section two* — 1st, Gere; 2d, Baker; 3d, Denison; 4th, Hosch; 5th, Peterson; 6th, Frost, the relator.

*Section three* — 1st, Gere; 2d, Hosch; 3d, Baker; 4th, Denison; 5th, Hitchins; 6th, Osborn; 7th, Breed; 8th, Frost, the relator.

*Section four* — 1st, Gere; 2d, Hosch; 3d, Baker; 4th, Osborn; 5th, Denison; 6th, Frost, the relator.

The other proposers were at higher sums.

On the 17th of November, 1869, the commissioners awarded all the sections to Gere, the aggregate of whose bids was over $236,000, reciting that he was the lowest bidder therefor. Gere neglected to enter into contracts within ten days, as required by the regulations.

Letters from Baker, Denison, Hosch, Peterson, Hitchins, Osborn and Breed, dated on several days, from December 2d to December 8th, were received about those dates by the commissioners, declining to enter into contracts, according to their respective proposals.

On the 9th of December, 1869, the commissioners passed a resolution reciting that the relator was the lowest bidder who would execute the contracts and give the required security, and awarding them to him, and on the same day notified him of this resolution, and required him to enter into contracts. The aggregate of his bids was over $345,000. On the 10th of December, 1869, the relator presented himself at the office of the commissioners, prepared to enter into contracts, and offered so to do. The commissioners refused to contract, and on the same day passed a resolution rescinding the resolution of the 9th.

On the 11th of February, 1870, the commissioners passed a resolution to advertise for proposals for section 1, and also to return the relator's certificates of deposit. In pursuance of this advertisement they received, May 15th, 1870, fifteen proposals. Some of these were lower and some higher than the proposal of the relator in November for the same section; but none were as low as the November proposal of Gere. The relator made no proposal in March. On the 18th of March, 1870, the commissioners voted to award the contract for section 1 to Lewis Rider, the lowest bidder. On the 3d of June, 1870, the commissioners, reciting that Rider had neglected to contract, passed a resolution to advertise section 1 and to advertise sections 2 and 3. In July, 1870, these sections were withdrawn. On the 6th of August, 1870, the commissioners again resolved to advertise for proposals for sections 1, 2, 3 and 4, and in pursuance of such resolution proposals were received October 7th, 1870; nine or ten persons offering for each section. The relator made no proposal; but on the 6th of September, 1870, he served the board with a notice, stating that he had ever been and was ready to enter into contracts pursuant to his proposals. For each of these sections some of the proposals were higher and some lower than the relator's corresponding proposals in November, 1869, and the sum total of the lowest was about $262,000, and more than $70,000 less than the sum total of the relator's. Of these proposals the lowest on section 3 was rejected for informality.

On the day of receiving these proposals, viz., October 7th, 1870, an order, granted by Mr. Justice INGALLS, was served on the commissioners, requiring them to show cause why they should not award the contracts to the relator. Owing to that order on the same day, they voted to lay on the table a reso lution awarding the contracts to the several lowest bidders in the proposals that day received. That order was the commencement of this present proceeding.

Before considering the main question, I may remark that the provision referred to by the defendant's counsel (Sess. Laws 1847, chap. 278, § 6), to the effect that on the refusal of a person to enter into contracts, the commissioners must receive further proposals, seems to be confined to contractors under that act.

The Constitution declares that all contracts for work or materials on any canal shall be made with the person who shall offer to do and provide the same at the lowest price, with adequate security for their performance. (Art. 7, § 3.) It is evident that this is a declaration of a broad and general principle. To carry it out *literally* might often be impossible. In the present case Gere was the lowest bidder with adequate security. But he refused to contract. His deposit might be and should be forfeited; but he could not be forced into a contract. If the Constitution, in its literal sense, is imperative, the contract must be made with him, and what can be done? And again passing over Gere and the others, and taking the relator as the lowest available bidder in November, 1869, it appears that in the following October there were others lower than the relator. How is the Constitution, under a literal construction, to be applied to this state of affairs? It is necessary, therefore, that in carrying out this constitutional provision some regulations shall be adopted by which it may be decided, and some tribunal established which may decide who is the lowest bidder. There must be reposed in some officers of the State a discretion on this subject; and they must apply this constitutional provision in its *spirit*, not in its *letter*.

In accordance with this view are the remarks of the court in *The People* v. *The Contracting Board* (27 N. Y., at p. 381). The powers conferred upon the board necessarily involved and implied an exercise of discretion. They are to determine who is the lowest bidder and what is adequate security. To the same effect is the case of *The People* v. *Contracting Board* (33 N. Y., 382). The law relative to the issuing of the writ of mandamus is fully examined by Senator Tracy, in the case of *Oneida Common Pleas* v. *The People* (18 Wend., 78), decided in the Court of Errors. The distinction is pointed out between a direction to an inferior tribunal to act, and a direction to it how to act. It is held that where a discretion is reposed in an inferior tribunal, a mandamus should not be granted to direct that tribunal how to act. The same rule is laid down and enforced by the citation of many additional authorities: In *The People* v. *Superior Court* (20 Wend., 608). It is recognized in *The People* v. *Canal Board* (13 Barb., 432), and *The People* v. *Brennan* (39 Barb., 652). It is said, in *The People* v. *Contracting Board* (27 N. Y., 378), to be well settled that where the act requires the exercise of discretion, this remedy will not lie; and I understand that this principle is not disputed by the relator. But he insists that the commissioners have exercised their discretion, and are thereby concluded; that they have decided, and have now only to act accordingly.

It seems to be well settled, that if this were a matter between private individuals, the act of the board in notifying the relator that they had awarded him the contract would have made a binding agreement; because it would be the concurrence of the minds of the parties upon a distinct proposition manifested by an overt act. (*Trevor* v. *Wood*, 36 N. Y., 307; *Mactier* v. *Frith*, 6 Wend., 103; *Myers* v. *Smith*, 48 Barb., 614.) This doctrine is held forcibly in the case of Prot. Epis. Public School (40 How., 139).

Supposing, then, that this were a case arising between private individuals, what remedy would the court grant to a person standing in a position analogous to that of the relator?

If A offered to enter into a contract with B to repair B's house, and B, by notice to him, accepted the offer, and then refused to enter into the contract, I suppose that no court would maintain a bill for specific performance to require B to enter into such a contract. A might have his action for damages, but this would be his only remedy; and for the excellent reason that this would be a sufficient remedy.

Now in the present case a writ of mandamus would, in effect, require the defendants specifically to perform an agreement to enter into a contract, by which the relator was to do certain work and receive therefor certain pay. The rights of the relator arise solely out of an alleged agreement made by him with defendants. This is not a case like that of 32 N. Y., 473, or 39 Barb., 652, or 30 How., 78, and many others, where there was no agreement entered into between the parties, but a positive duty was imposed on the defendants which they neglected. The damages sustained by the relator in this present case are wholly pecuniary. He loses so much money and nothing else, and the amount of loss can be ascertained without difficulty. Now I think it plain that, between private individuals, the court would never, by a decree for specific performance, compel a defendant to enter into a contract, the terms of which were merely to pay the plaintiff so much money for so much work to be done on defendant's property. Ought a different rule to apply when the State officers are parties?

I am aware that it has been said that a mandamus will sometimes issue, although an action for damages will lie. But, so far as I have seen, the cases in regard to which this has been said are where the relator claimed some specific thing, such as the execution of a lease of land (*People* v. *Wager*, 10 Wend., 395); of a deed (*Van Rensselaer* v. *Sheriff*, 1 Cow., 501); while in the present instance, the relator only asks the opportunity of earning some money. And it should be observed that if the relator's rights spring from the alleged agreement made by the award and the notification of it, he would have these same rights, even if he

had been, in fact, the highest bidder; for he rests not so much on the position that he was the lowest bidder, as a resolution of the board voting him such; that is to say, the rights of the relator arise not because it was the duty of the commissioners to award him the contract as the lowest bidder, but because they have notified him that they have thus awarded it, and have, therefore, as he claims, made a binding agreement with him.

In the case of *The People* v. *Collins* (19 Wend., 56), it was held, that where certain commissioners, appointed for that specific purpose, had, in fact, laid out a road, and thereby had performed all the duties imposed upon them, the commissioners of highways, who were bound to open this road, could not question the correctness of the decision.

But that is not quite analogous to the present case. The principal and important act to be done by these defendants is the making the contract; and the question is, whether that subject has yet passed beyond their discretion. Now it will be seen, that, at the time when these proceedings were commenced, the relator was not, in fact, the lowest bidder, several of the offers received in October, 1870, being lower than his; so that if the matter is still within their discretion, he cannot claim the contract on the ground of their statutory duty. A private individual who, by notice to the other party, accepts an offer in a case similar to this, is bound by his acceptance, whether the offer is the highest or the lowest.

His obligations arise simply out of contract; not from any official duty. The defendants have official duties to peform, and this proceeding is to enforce these duties; unless their acts, under which the relator claims, have been in accordance with their official duties the relator can have no rights to this remedy. We must therefore consider, that, when the commissioners awarded the contracts to Gere, that award was at once an acceptance of Gere's offer, and a rejection of all the others. Upon that award being made, none of the others who had made proposals were bound by them any longer. They were at liberty to consider the matter ended, and to

The People ex rel. Frost *v.* Fay.

apply their time and money to other purposes. A binding agreement had been made with Gere. His failure to execute the contract could give no new validity to the offers which had once been rejected. If these offers, then, after the award to Gere, were not binding on the bidders, then the commissioners had no right to treat them as regular offers, made in pursuance of law, and they had no right to award the contract to the relator as the lowest bidder. He would not have been bound to accept the award to him, because he had been already discharged from the obligation of his offer by its rejection, signified by the acceptance of Gere's. And if the relator was under no legal obligations to accept the award at the time it was made to him, then no valid award could be made to him. For an award must be made among bidders who are legally bound to accept the award. Otherwise it becomes a mere voluntary gift on the part of the commissioners. It is true that the relator was willing to accept it; but if he was not legally bound to accept the award to him when it was made, and to enter into the contract, then, in direct opposition to the statutory and constitutional provisions, it was the commissioners who made the offer to the relator, and the relator who had the option of accepting or declining. If this be so, the whole arrangement on which the relator relies is seen to be a mere voluntary agreement between him and the commissioners, of no more validity than if he had never made any bid whatever, but had merely accepted their offer, that he might do the work at a certain sum if he chose. Such an agreement ought not to be enforced by mandamus.

There is another consideration; that is, that there is some doubt as to the right of the commissioners to make a contract to the amount of these proposed. The act of 1869, chapter 877, among other things, appropriates $100,000 for the construction of the Fish Creek feeder. Section 3 authorizes the canal commissioners to cause this work to be constructed. Section 4 requires that the work be let to the lowest bidder. Section 5 enacts that no more money shall be expended on

the works hereinbefore mentioned than is above appropriated; but it shall be lawful for the canal commissioners. having in charge the execution of said work, to make all contracts necessary for the completion of the same, subject, however, to all restrictions, provisions and conditions contained in this act. Here is an express provision and restriction that no more money shall be expended on this feeder than $100,000, and the authority of the commissioners to contract is subject to all the restrictions and provisions of the act.

I find no other restrictions or provisions than these which have been mentioned, and another, viz., to submit the plans to the canal board. While I am not ready to say that the commissioners are not authorized to make contracts beyond $100,000 (as the relator's is), still there is doubt on that point if any meaning is to be given to the words " restrictions and provisions." Again, the act of 1870, chapter 767, passed May 9th, authorizes the canal board, in their discretion, to apply the $100,000 appropriated to the Fish Creek feeder, by the act of the previous year, to the construction of any feeder or reservoir which will supply the present deficiency of water on the long or Rome level. Thus, after the award and notice, under which the relator claims that he has an absolute right to a contract, the legislature authorized a different appropriation of the funds from which he was to be paid. If, after the passage of this last act, these defendants were under obligation to execute a contract, as the relator claims, they would practically have deprived the canal board of the discretion thus given, to change the appropriation to another object. It could not have been the understanding of the legislature that an agreement, binding on the canal commissioners, had been already made. And this act must be considered a declaration that no obligation then rested on the commissioners to contract for this feeder. By this declaration they ought to be bound, whatever right the relator may have to ask damages from the State. And further, this last act provides that no more money shall be expended on the works hereinbefore enumerated than is above appropriated ; and it shall not be

lawful for the officers having in charge the execution of said work, to make any contract whereby any expenditure in excess of the appropriation will be incurred, oɩ any further appropriations for the same be rendered necessary. The spirit, if not the letter of that provision applies to these contracts. If the canal board had applied the $100,000 to another feeder to supply the long level, as they were authorized to do, would not this restriction have limited the amount of the contract? And, as I remarked before, without deciding that the commissioners are thus limited, there is enough doubt on that question to make a court withhold a discretionary writ, which would, in effect, decide that point.

It may be proper to say a word or two on the cases cited by counsel which most nearly bear on this question. The case of *The People ex rel. Vickerman* v. *Contracting Board* (46 Barb., 254), holds, as I understand it, that a mandamus lay against that board to compel them to award a contract to the lowest bidder. It has already been shown in this case that the relator was not, in fact, the lowest bidder. Gere and others were lower at the first bidding, and others were lower in October, 1870. And the relator insists that because the defendants, in fact, passed a resolution awarding him the contract as the lowest, this act of theirs is conclusive. But the case of Vickerman held that the writ should issue, even though it was remarked, *arguendo*, by the court, an award to another person had been made, placing the decision on the absolute right of the relator, not on the action of the board. Since that decision, the case of *The People ex rel. Bullard* v. *The Contracting Board* (33 N. Y., 382), has been briefly reported. This states that the restriction that a contract must be made with the lowest bidder, does not imply that the lowest bidder can invoke the power of the court to compel the board to enter into contracts with him. I have already spoken of the case of *The People ex rel. Beldon* v. *The Contracting Board* (27 N. Y., 378), which appears to me to be in harmony with the case just above mentioned, as is also the case of *The People ex rel. Yates* v. *The Canal*

*Board* (13 Barb., 432), where the matter is very fully examined by Mr. Justice CADY. Without endeavoring to reconcile the apparent conflict in some of these cases, it is only necessary to say, that every application for a mandamus is in its nature discretionary. As is well known, this is not a writ of right, and should issue only where the duty of the defendants and the rights of the relator are clear. I have considered the question carefully, and while I do not intend to say that the relator may not have an action for damages against the defendants (———— v. *Commissioners of Highways*, decided 1871 by Commissioners of Appeals), or a claim against the State for the loss he has sustained, I do not think he ought to have the relief he asks in this proceeding.

Judgment for defendant on the demurrer, with costs to be paid by the relator.