THE INSTITUTE FOR THE EDUCATION OF THE MUTE AND BLIND, PLAINTIFF IN ERROR, v. HENDERSON, DEFENDANT IN ERROR.

1. CONSTITUTIONAL LAW.
It is provided in the constitution that no money shall be paid out of the state treasury except upon appropriations made by law and on warrant drawn by the proper officer in pursuance thereof.

2. SAME.
Under this provision, a statute providing for the payment of money out of the state treasury other than by appropriation and warrant is void, and the inhibition applies as well to statutes providing for the disposition and disbursement of state funds before they are covered into the treasury.

3. CONSTRUCTION.

A cogent element in the construction of the general terms of a constitution is the consideration of the object to be accomplished and the mischiefs to be avoided.   Like a statute, the instrument should receive such a construction as will prevent an invasion of its legitimate operation.

4. STATUTES UNCONSTITUTIONAL.

The act approved April 14, 1889, entitled "Bounties;" the act approved Feb. 12, 1881, entitled "Trees;" and the act approved March 14, 1881, entitled "Loco or Poison Weed," are unconstitutional.

### *Error to the District Court of Arapahoe County.*

PLAINTIFF in error, The Institute for the Education of the Mute and Blind, as plaintiff below, brought this action for the purpose of compelling the auditor of state to draw his warrant for the amount of an appropriation made by the last general assembly for the maintenance of the plaintiff institution.   The auditor as a defense to the action claims that there were no funds in the state treasury wherewith to pay the appropriation.   Upon final hearing in the court below this defense was established to the satisfaction of the court, and the writ of mandamus denied.   The case comes here by writ of error.   The following stipulation of counsel may fairly be said to embody the material facts established by the evidence introduced upon the trial:

"It is hereby stipulated by and between the above named parties, by their respective counsel, that the record and bill of exceptions in the above entitled case disclose that if a certain act of the legislature entitled "Bounties," approved April 18, 1889, commonly known as the Bounty law; a certain other act entitled "Trees," approved February 12, 1881; and a certain other act entitled "Loco or Poison Weed," approved March 14, 1881, are unconstitutional, that the funds remaining in the hands of the treasurer will be sufficient to pay the appropriation of plaintiff in error, mentioned in the petition; but if said laws be constitutional, and the funds of the state shall be diverted for the payment of bounties under said law, then there will be no funds out of which to pay said appropriation."

Messrs. Butler & McKinley and H. Riddell, for plaintiff in error.

Mr. J. H. Maupin, attorney general, and Mr. H. B. Babb, for defendant in error.

Chief Justice Hayt delivered the opinion of the court.

In this proceeding the constitutionality of the Bounty law of 1889, the Loco Weed law of 1881 and the act in relation to Forest Trees of 1881 is contested.

. The first of these acts in the order in which they occur in the stipulation of counsel is entitled " An Act to provide for the destruction of wolves, coyotes, bears and mountain lions and providing for a premium therefor." By this act it is provided that any person who shall kill any of the animals mentioned shall be entitled to a certain fixed premium therefor. This premium varies in amount for the different animals named. Session Laws, 1889, p. 35. The second act covered by the stipulation is entitled " An Act to encourage the planting of trees upon the roadsides and along the line of irrigating canals and upon lands under irrigation." This act provides that the planting of trees as specified therein shall not increase the value of the lands for the purpose of assessment and taxation. Furthermore a premium of $2.00 for every 100 trees so planted and growing after three years shall be paid each year for seven years after the first three years have elapsed. Session Laws 1881, p. 250. The third act provides that any person who shall dig up any loco or poison weed in accordance with the provisions of the act " shall receive a premium of 1½ cents per pound for each pound of such weed dug up." Session Laws 1881, p. 177. The premiums provided by each of these several acts are to be paid in the first instance by the county treasurer of the proper county, the amount to be credited to such officer in his settlement for state taxes with the state treasurer.

It must be admitted that the state funds and not the funds

of the county are drawn upon for the payment of the bounties provided for by these several acts. That the legislature has the power to provide for the payment of bounties is not contested. It is contended, however, that these acts are in conflict with art. 5, sec. 33 of the state constitution which says: "No money shall be paid out of the treasury except upon appropriations made by law and on warrant drawn by the proper officer in pursuance thereof." Under this provision, when money has been actually paid into the state treasury, a statute providing for its payment other than by appropriation and warrant, is void. No argument is needed to demonstrate this. The language employed admits of no other construction. The question presented is therefore narrowed to this: Does this constitutional inhibition apply merely to such money as actually reaches the treasury, or does it apply to funds belonging to the state which have not yet reached the hands of the treasurer.

Counsel in argument inveigh against the policy of this legislation. However strongly the practice of paying out money in the manner provided by these acts is to be condemned as dangerous and improvident, this is an argument properly addressed to the legislative branch of the government and not to the courts. The argument here can only be given weight in proportion as it affects the power of the legislature in the premises.

The provision of the constitution relied upon to overthrow these acts varies from that of most of the other states, in that it requires not only an appropriation, but also a warrant to be drawn before money can be lawfully paid. Provisions upon the subject are, however, to be found in the national constitution and in nearly all of the state constitutions, which show that the framers of such instruments have with great unanimity considered that a danger existed which should be guarded against. The provision in the national constitution is as follows: "No money shall be drawn from the treasury but in consequence of appropriations made by law, and a regular statement and account of the receipts and expenditures

of all the public moneys shall be published from time to time." Art. 1, sec. IX, par. VI. In speaking of the purposes of this section of the constitution, a learned commentator says:

"The object is apparent upon the slightest examination. It is to secure regularity, punctuality, and fidelity, in the disbursements of the public money. As all the taxes raised from the people, as well as the revenues arising from other sources, are to be applied to the discharge of the expenses, and debts, and other engagements of the government, it is highly proper that congress should possess the power to decide how and when any money should be applied for these purposes. If it were otherwise, the executive would possess an unbounded power over the public purse of the nation, and might apply all its moneyed resources at his pleasure. The power to control and direct the appropriations constitutes a most useful and salutary check upon profusion and extravagance, as well as upon corrupt influence and public speculation. In arbitrary governments, the prince levies what money he pleases from his subjects, disposes of it as he thinks proper, and is beyond responsibility or reproof. It is wise to interpose, in a republic, every restraint by which the public treasure, the common fund of all, should be applied with unshrinking honesty to such objects as legitimately belong to the common defense and the general welfare. Congress is made the guardian of this treasure; and to make their responsibility complete and perfect, a regular account of the receipts and expenditures is required to be published, that the people may know what money is expended, for what purposes, and by what authority." 2 Story on Constitution (5th ed.) § 1348.

The case of *Ristine, Auditor, v. The State of Indiana,* reported in 20th Indiana reports, commencing at page 337, will be found an exhaustive and valuable review of this provision. In the course of the opinion, the court say:

"A promise by the government to pay money, is not an appropriation. A duty on the part of the legislature to make an appropriation is not such. A promise to make an appro-

priation, is not an appropriation. The pledge of the faith of the state, is not an appropriation of money with which to redeem the pledge. Usage of paying money in the absence of an appropriation, cannot make an appropriation for future payment. The question is to be settled upon the meaning of the constitution. Usage may be evidence of the meaning the administrative officers have put upon that instrument, and, as such, entitled to respectful consideration, but it is no binding interpretation; and the late usage was, in fact, probably commenced without consideration." See also *People ex rel. v. Spruance*, 8 Colo. 530.

The necessity for an appropriation in each instance is dwelt upon in the opinion, and it is shown that an appropriation is not to be inferred from doubtful or ambiguous language. Notwithstanding the previous strict construction given by the courts to the provision with reference to appropriations, with which construction the framers of our constitution must be presumed to have been familiar, they were not content with the usual provision upon the subject, and consequently inserted an additional clause not generally found elsewhere. Under it no money can be paid out unless upon a warrant drawn by the proper officer. It is doubtful if these bounty statutes should be held to comply with the clause requiring an appropriation; but it is not necessary for us to determine this question in view of the provision for payment without a warrant, to be found in each of these acts. *People ex rel. v. Spruance, supra.* From the authorities cited, and numerous others which might be added, it is clear that the object of these provisions of the constitution is to prevent the extravagant and improvident payment of the moneys belonging to the state, and also to furnish a ready check upon the state treasurer. Under it the sanction of two officers must be had before money can be lawfully disbursed.

The attorney general contends for a construction whereby the provision shall be held to apply only to moneys after the same shall have reached the hands of the state treasurer. This construction is too narrow, and if adopted, the provision

would be unavailing to effectuate the object intended. A cogent element in the construction of the general terms of a constitution is the consideration of the object to be accomplished and the mischiefs to be avoided; and like a statute, the instrument is to receive such a construction as will prevent an evasion of its legitimate operation. Endlich on Int. of Stats. §§ 518, 521.

As illustrative of the decisions of the courts in cases where the intent has been allowed to control the general language of statutory and constitutional provisions, we cite *Wheeler v. McCormick*, 8 Blatchford (C. C.), 267, where a statute was under consideration containing the following, " The original jurisdiction of the circuit court of the southern district of New York shall be confined to causes arising within said district and shall not be construed to extend to causes arising within the northern district," and it was held not to exclude the jurisdiction of the circuit court for the southern district of New York, of causes of action arising out of the state. In *State v. King*, 44 Mo. 283, under an act requiring insurance companies, before commencing business to have a certain amount secured by mortgage " on unincumbered real estate," it was held that such real estate must be within the state. In *Wayne County v. The City of Detroit*, 17 Mich. 390, under a constitutional provision requiring that the " legislature shall provide for the establishment of a library in each township, and all the fines collected in the several counties and townships for any breach of the penal laws, shall be exclusively applied to the support of such libraries," it was held (Judge. Cooley delivering the opinion of the court) that the term " counties and townships " as therein used, was meant to include all the municipal subdivisions of the state.

In the case of *The People ex rel. Frost v. Fay*, 3 Lans. 398, it was held that the following constitutional provision, " All contracts for work or materials on any canal shall be made with the person who shall offer to do or provide the same at the lowest price, with adequate security for their performance," reposed in certain officers a discretion to determine

who is the lowest bidder and what is adequate security, and that the constitutional provision must be applied in its spirit and not according to the letter of the instrument.   In *Jackson v. Collins*, 3 Wheaton, 541, the supreme court of the United States decided that the term " beyond seas," in the statute of limitations of the state of Georgia, meant without the limits of the state where the statute was enacted.   In *Henry v. Tilson*, 17 Vt. 479, in one section, the act under consideration by the court provided a penalty in case any attorney should knowingly receive as fees a greater sum than that allowed by law ; and in the following section it was declared that if any officer or other person should receive any greater fees than provided by law, such person should pay a penalty, etc., and it was held that the latter section should be construed as though the word " *knowingly* " was also incorporated therein.

Under the construction contended for by the attorney general the legislature may in all cases provide for the disbursement of public moneys before such moneys actually reach the hands of the state treasurer, and thereby entirely defeat the operation of the clause under consideration.   This cannot be permitted.   The conclusion that payment is only to be made upon a warrant regularly drawn is the only one suggested under which the intent can be effectuated, and as it is in harmony with the general spirit of the provision, we feel constrained to adopt it.

An additional argument in support of the conclusion reached, may be drawn from other sections of the constitution as heretofore construed by this court.   For instance, in fixing the total amount of appropriations for any fiscal year the legislature, except in certain specified instances, is limited to the revenue that may properly be applied in the payment of the same.   The amount of such revenue is almost entirely a matter of calculation.   *In re Appropriations*, 13 Colo. 316. To permit the disbursement of an indefinite amount of money, as these bounty acts contemplate, is to introduce an element of uncertainty into these calculations that will seriously em-

barrass both the legislature and the departments in giving effect to § 16, art. X of our state constitution, with relation to the levying of taxes to meet appropriations. In our opinion, the several acts under consideration are plainly in violation of the constitutional provision invoked.

If the legislature desires to pay bounties, it may do so for all proper purposes, by making the necessary appropriations therefor to be paid out upon warrant drawn by the auditor upon the state treasurer. Thus the public funds of the state will be protected, and the safeguards provided by the vigilance of the framers of our fundamental law will be given a construction best calculated to prevent the evil aimed at. If warrants have been issued under statutes otherwise free from constitutional objection, and such warrants have not yet been paid, the legislature still has it within its power to make the necessary appropriation for the payment of the same.

In conclusion, we call attention to the fact that in the state of Missouri, a statute similar to our act providing for the payment of bounties for the growing of trees has been declared obnoxious to two other constitutional inhibitions: *Deal v. Miss. Co.*, 18 S. W. Rep. 24.

The judgment of the district court is reversed.

*Reversed.*