*Noyes & Pettingill v. Hewitt.*

---

Noyes & Pettingill *vs.* Hewitt.     [141]

Where on a trial in a justice's court there is *evidence on both sides*, and even where there is *only slight evidence* in support of the claim on which there is a recovery, a court of common pleas is not authorized on *certiorari* to reverse the judgment, although such court may arrive at a conclusion upon the facts of the case, or the weight of evidence, different from that drawn by the justice if he decides the cause, or by the jury if there was a jury trial.

A court of common pleas may, however, reverse a justice's judgment where there is *no evidence* to support a demand for which a recovery is had, or where there is a *material defect in the proof.*    So the judgment will be reversed where there is a recovery for a cause of action *totally different from that laid in the declaration,* or where the demand on which the recovery is had is manifestly *illegal.*

The supreme court is not concluded by the judgment of a court of common pleas in a certiorari case, from reversing the judgment of that court on the assumption that such judgment was rendered on the facts of the case, and therefore not the subject of review by the supreme court : on the contrary, where a justice's judgment is reversed by a court of common pleas, *without any assignable cause,* such judgment of reversal is erroneous, and will be reversed on writ of error.    The cases of *Whitney* v. *Sutton,* and *Columbia Turnpike Road* v. *Haywood,* (10 *Wendell,* 413 and 425,) over-ruled.

### Noyes & Pettingill *v.* Hewitt.

It is no cause of reversal of a justice's judgment, that the justice himself on the trial of the cause, discharged from the suit one of several defendants in an action of trespass, against whom no evidence had been given, and permitted him to be examined as a witness, instead of directing the jury to find him not guilty.

ERROR from the supreme court. Hewitt brought an action of *trespass* in a justice's court against Noyes and Pettingill, for the taking of a horse. The horse was taken by Pettingill, as a constable, by virtue of an execution against *Emery Lane* in favor of Noyes. The cause was tried by a jury. The question in contest was, whether the horse was the property of Hewitt or the property of Lane, or at least, whether Lane had not such an interest in the horse as was the subject of sale. When the plaintiff rested, no evidence having been given connecting Noyes with the *taking*, it was moved on that ground that he be discharged from the suit. The *justice* accordingly *discharged* him, instead of directing the jury to find a *verdict* in his favor. Noyes was then sworn as a witness, [142] and from the evidence given subsequent to his discharge, it appeared that the horse was sold under the execution, and that he purchased him, and that the sum bid by him was applied on the execution. The cause was submitted to the jury, who found a verdict of "no cause of action," on which the justice entered judgment against the plaintiff for the costs of suit. The plaintiff sued out a *certiorari*, removing the proceedings into the Orleans common pleas, which court *reversed* the judgment of the justice, and gave judgment for costs against both Noyes and Pettingill, who thereupon sued out a writ of error, removing the record into the supreme court, where the judgment of the common pleas was *affirmed.* Noyes and Pettingill then removed the record into this court by writ of error. The following was the *opinion* delivered in the supreme court, on affirming the judgment of the common pleas: "The subject of dispute was a horse. The jury must have found that the plaintiff *Hewitt* was *not the owner.* The common pleas held he *was* the owner. If this be considered a question of *fact*, the judgment of the common pleas must be affirmed; if a question of *law*, then I think they were right. So that in either view the judgment must be affirmed." The cause was argued in this court by.

*M. T. Reynolds*, for the plaintiff in error;

*A. Taber*, for the defendant in error.

After advisement, the following opinion was delivered:

*By the* CHANCELLOR.—The first question that presents itself in this cause is, whether the justice decided correctly in discharging Noyes so that he might be a witness in favor of the other defendant. The rule is well established that, in actions of *tort*, if there is no evidence against one of several joint defendants, it is the duty of the court, upon application, to discharge the one against whom there is no testimony, so that he may be a witness for his co-defendants. And in the case of *Van Deusen* v. *Van Slyck*, (15 *Johns. R.*, 223,) the supreme [143] court reversed the judgment of the court of common pleas of Montgomery county, because that court had refused to discharge a defendant, in such a case, upon a jury trial. That case shows that the application is in the nature of an application for a nonsuit, although in form, the jury are directed to find the defendant against whom there is no evidence, not guilty; and that if the court refuse to discharge the defendant, in a proper case, it is error. Here there was not a particle of evidence against the defendant Noyes, to charge him with a trespass, at the time the application was made for his discharge; and if the justice had refused to grant the application, and a verdict had been afterwards found against the other defendant, it would have been the duty of the common pleas to have reversed the justice's judgment for that cause. From the return of the justice it is probable he erred in point of form in directing the defendant to be discharged without a formal verdict, instead of directing the jury to discharge him by immediately finding him not guilty. But the jury had no discretion on the subject, and if they had refused to find a verdict discharging him,

Noyes & Pettingill *v.* Hewitt

under such direction of the court, even their decision would have been reversed upon certiorari. It was, therefore, a mere technical error in the justice to discharge the defendant himself, instead of directing the jury to find him not guilty for want of any evidence against him. There was no ground, therefore, for reversing the judgment as to Noyes on that account, as the statute, in terms directs that the court of common pleas shall disregard mere technical omissions, imperfections, or defects, in the proceedings before the justice, which do not affect the merits of the case. (2 *R. S.* 257, § 181.) The evidence given after Noyes was discharged, as he was no longer a party to the suit, was not evidence on which the common pleas could reverse the judgment as to him.

I think the judgment of the common pleas was also erroneous as to the other defendant, and that that court had no legal right, upon the certiorari, to reverse the judgment as to either of the present plaintiffs in error. The action before the justice was an action of trespass, commenced as early as Sep- [144] tember, 1832. From the testimony of Lane, it is evident he had an absolute right to the possession of the horse, under his agreement with Hewitt, until the first of January, 1833, when the first payment was to be made, if he elected to keep the horse. The right of possession being thus vested in Lane at the time the horse was levied upon by the execution, which right could only be divested by a new agreement, or by the non-performance of this condition subsequent, Lane had an interest in the horse, which was a proper subject of levy and sale on the execution, under the provisions of the article of the Revised Statutes relative to executions against property, (2 *R. S.* 290, § 20 ; 3 *Wendell,* 500,) and after the levy of the execution upon the horse, even if the property was not then taken out of the hands of Lane, he could not make a new agreement, relinquishing the right to keep the property until the time appointed for payment, so as to defeat the lien of the execution. The evidence also showed such circumstances of suspicion, as to authorize the jury to conclude that the pretended agreement was a mere fraudulent cover to protect the property against creditors, and that Lane was in fact the real owner thereof. In either case, the plaintiff had no right to recover in an action of trespass at the time this suit was instituted ; and the verdict of the jury being warranted by the evidence, the court of common pleas had no right to reverse the judgment, merely because the judges of that court happened to differ in opinion with the jury upon a disputed matter of fact.

I think this point was not duly considered by the late chief justice and his associates in the case of *Whitney* v. *Sutton,* (10 *Wendell,* 411,) and in the subsequent cases upon which the judgment we are now considering appears to be based. The learned chief justice was undoubtedly right in supposing that the supreme court, upon a writ of error, were to correct errors of law merely, and that it was not their province to review and settle disputed questions of fact. But I think he misapprehended the law of the case, if he supposed that it was the intention of the legislature to give to the courts of common pleas an unlimited and uncontrollable discretion, upon certiorari, to reverse the deci- [145] sion of a jury or of the justice upon disputed questions of fact. He also erred in supposing that a writ of error was not the appropriate remedy for correcting the erroneous proceeding of the common pleas, when that court had reversed the judgment of the justice and the decision of a jury, without any reason which it was possible for the justices of the supreme court to conjecture, as was the case in *Whitney* v. *Sutton,* before referred to. I apprehend that the very fact that a judgment had been reversed without any assignable cause, was of itself an error in law, which made it the duty of the supreme court to reverse this unjustifiable decision of the common pleas and to restore the parties to their former rights.

The proper construction of the provisions of the Revised Statutes on the subject of a certiorari to justices' courts, does not, as has been supposed, give to the

common pleas an unlimited power to review the decision of the justice or of the jury upon mere questions of fact. The words of the statute, (2 *R. S.* 257, § 181,) are substantially the same as those which were contained in a similar provision of the justices' act in the revision of 1801, (1 *R. L. of* 1801, *p.* 501, § 19,) and which provision has not been materially changed since that time, except as to the court out of which the certiorari is to issue. The proper construction of those provisions is given by Mr. Justice Bronson, in the recent case of *Stryker* v. *Bergen,* (15 *Wendell,* 491,) which came before the supreme court upon a certiorari to the municipal court of Brooklyn, where the principal decisions of the supreme court in relation to this point are referred to and considered by him. He arrived at the very correct conclusion, in that case, that the court in which the certiorari was returnable had no right to reverse the decision of the court below upon a question of fact, merely because the appellate court might have arrived at a different conclusion from what the justice or jury did as to the weight of evidence. And I will only add, that whenever the court of common pleas departs from the principles there laid down by Justice Bronson, which are the principles upon which the supreme [146] court always acted, except in one or two cases, which we're erroneously decided, it will be the duty of the court which is called upon to review the decision upon a writ of error, to reverse it as contrary to law, and as an excess of jurisdiction which the common pleas had no right to exercise.

The conclusion at which I have arrived in this case therefore is, that the judgment of the court of common pleas, which reversed the decisions of the justice and of the jury, was erroneous; and therefore that the judgment of the supreme court affirming the judgment of the common pleas was erroneous, and should be reversed by this court.

On the question being put, *Shall this judgment be reversed?* all the members of the court, with one exception, (23 being present,) voted in the *affirmative.* The judgment of the common pleas was accordingly REVERSED.