The People, *ex rel*. Frederick A. Hackley and Benjamin Wells, *vs.* The Croton Aqueduct Board.

49 259
60h 489
49b 259
35ap 42

The court may exercise a discretionary power, as well in granting as in refusing a mandamus; as where the end is merely a private right, and when the granting of it would be attended with manifest hardships and difficulties.

This discretion should be exercised soundly, and in accordance with the peculiar circumstances of the case.

The defendants issued proposals for the building of a stone tower, engine house, &c. under a statute giving them authority for that purpose. The relators were the lowest bidders for the work, but the defendants refused to award the contract to them, or to any one else, for the alleged reason that no appropriation to cover the expense existed; and that since the time the proposals were received, they had materially changed and altered the design and character of the work to be done; and that they had decided that the public interests required that the work should be re-advertised and let under proposals framed in accordance with such alterations. *Held* that the issuing of the notice inviting proposals did not, alone and of itself, bind the defendants to award the contract to the lowest bidder, or create any obligation on their part, to award it at all. But that if the bids were extravagant, or far beyond the amount of the contemplated expenditure, they might, in their discretion, reject them altogether.

*Held, also*, that under the circumstances, it would not be a proper exercise of judicial power to grant a *mandamus* to compel the defendants to award the contract for the work in question to the relators.

The 4th section of the act of April 7, 1863, (*Laws of* 1863, *ch.* 95,) authorizing the Croton Aqueduct Board to construct the work therein mentioned, and to purchase the materials necessary for the same, " at such places, and in such manner, by contract, as they may deem the public interests require," is inconsistent with the first section of the act of 1861, (*Laws of* 1861, *p.* 702,) which enacts " that all contracts by and on the behalf of the mayor, aldermen and commonalty of the city of New York shall be awarded to the lowest bidder for the same, respectively, with adequate security; and every such contract shall be deemed confirmed in and to such lowest bidder at the time of the opening of the bids ;" and the act of 1863 being the latest enactment, its effect is to except the Croton Aqueduct Board from the operation of the act of 1861, and, to that extent, to repeal that act.

THIS is an appeal from an order denying a motion for a peremptory mandamus, made for the purpose of compelling the Croton Aqueduct Board to award to the relators a certain contract for building a stone tower, engine house, or boiler house, at or near 173d street, near the high bridge.

It appears from the papers on the motion, that prior to the 3d day of August, 1866, the Croton Aqueduct Board, under the authority conferred upon them by an act of the legislature of this state, passed April 7, 1863, page 152, and Laws of 1864, page 628, advertised for and issued proposals for building a stone tower, engine house and boiler house, near 173d street, and thereby declared that proposals for the work would be received at the office of the Croton Aqueduct Board until 11 o'clock A. M. of August 3, 1866, at which hour the bids would be publicly opened and read, and the award of the contract made. That by reason of such advertisement and invitation for proposals, the relators made an offering for the work to be done, in due form, tendering adequate security for the faithful performance of the contract, on the 2d day of August, the day prior to the opening of the bids and the proposed award of the contract.

On the 3d day of August, at the time and place named in the advertisement and in the proposals issued by the Croton Aqueduct Board, the comptroller of the city, and the commissioners of the Croton Aqueduct Board, met to open the proposals that had been made by many parties for the work. The proposals for the work were then and there opened, the various bids for the work announced, and it was then and there declared, by the board, that the relators were the lowest bidders for the work. But no award of the contract was made to the relators, or to any other person.

The relators claim that they are entitled to the contract, because they were the lowest bidders in answer to the advertisement for proposals, of the Croton Aqueduct Board.

The respondents, in answer to the application for a mandamus, show that no appropriation existed covering the expense of the work mentioned in the proposals received and opened by the board on the 3d of August, 1866, the same having been exhausted prior to the 18th of July, 1866. That soon after the 3d of August, 1866, the relators were informed, by the Croton Aqueduct Board, that no award of

contract would be made under the proposals received that day, for the reason that no appropriation to cover the expenditure of the contract then existed. That since that time the members of the Croton Aqueduct Board, in accordance with what they deem for the best interest of the public, have extensively and materially changed and altered the amount, character and design of the work to be done, from what was required by the advertisements issued in July, 1866, and the proposals received thereunder ; and that they have decided, and are of the opinion, that the public interests require that the work should be re-advertised and let under proposals framed in accordance with such alterations.

The respondents claim that by the fourth section of the act of 1863, they are vested with a discretion which authorizes them, at their pleasure, to refuse to award the contract to any person bidding for the same. The case was submitted on written points.

*Wm. F. Allen,* for the appellants.

*Richard O. Gorman,* (counsel for corporation,) and

*W. C. Trull,* for the respondents.

*By the Court,* MILLER, J. The court may exercise a discretionary power, as well in granting as in refusing a mandamus, as where the end is merely a private right, and when the granting would be attended with manifest hardships and difficulties. ( *Van Rensselaer* v. *Sheriff of Albany County,* 1 *Cowen,* 501. *The People* v. *The Canal Board,* 13 *Barb.* 432, 450. *Ex parte Fleming,* 4 *Hill,* 583. 2 *John. Cas.* 2d ed. 217, *note.*) This discretion should be exercised soundly, and in accordance with the peculiar circumstances of the case. I think that in the case under consideration it would not be a proper exercise of judicial power, under the authorities cited, to grant the writ. There are some circumstances

which render it at least exceedingly doubtful whether the discretionary power of the court would be properly employed in granting the remedy sought. The defendants issued proposals for the building of a stone tower, engine house, &c. at Carmansville, under the act of the legislature conferring upon them authority for that purpose. (*Laws of* 1863, *ch.* 95, *p.* 152.) The relators were the lowest bidders for the work, but the defendants have refused to award the contract to any one, for the alleged reason that no appropriation to cover the expenditure of the contract then existed, and that since the time when the proposals were made, they have materially changed and altered the design and character of the work to be done, from what was required by the former advertisement; and that they have decided that the public interests require that the work should be re-advertised and let under proposals framed in accordance with such alterations. By the fourth section of the act in question the defendants were authorized to construct the work, and to purchase materials necessary for the same, "at such places and in such manner, by contract, as they may deem the public interests require." By the notice issued they did not obligate themselves to award the work to the lowest bidder; and I do not understand that the issuing of proposals, alone and of itself, created an obligation thus to dispose of it. It was a mere notice that bids would be received, and if perchance they happened to be extravagant, or far beyond the amount of the contemplated expenditure, I think ordinarily there would be a discretionary power to reject them altogether.

If an individual issues proposals for bids for the erection of a building or any other work, and he finds upon opening them that they far exceed his views or his means, he does not thereby bind himself to the contractor who purposes to take the job, and who happens to be the lowest in the scale of prices. He has a right to determine whether he will proceed to the completion of the work proposed or not. Under

ordinary circumstances the same rule would apply to public bodies, unless there is some positive enactment which interferes with or prevents its enforcement.

It is insisted that the relators were entitled to a contract as the. lowest bidders, in accordance with the provisions of the act of the legislature which enacts " that all contracts by and on behalf of the Mayor, Aldermen and Commonalty of the City of New York, shall be awarded to the lowest bidder for the same, respectively, with adequate security ; and every such contract shall be deemed confirmed in and to such lowest bidder at the time of the opening of the bids," &c. (*Laws of* 1861, *p.* 702, § 1.) This act was passed prior to the act of 1863, before cited, and the provision of the 4th section of the latter act, which authorized contracts to be made as the public interests might require, is inconsistent with the act of 1861 ; and as the latest enactment, it would seem to be a modification of the act of 1861, in respect to the Croton Aqueduct Board. It is at least questionable, whether it was not intended to except the defendants from the operation and effect of the act of 1861, and to that extent to repeal that act. I am inclined to think that such is its legitimate effect, and that in this particular it is a direct alteration of the act of 1861. ·

It may also be remarked, that it is doubtful whether the act of 1861, which was evidently intended to prevent corruption and favoritism in the distribution of contracts, was designed to embrace, and actually embraces a case where no contract whatever has been awarded, and where the public welfare would seem to require that the proposed improvement should be abandoned by reason of exhorbitant prices demanded for the work, far exceeding any appropriation made or contemplated, or on account of combinations among contractors, detrimental to the city, or for other good and sufficient causes, which would lead honest and faithful public officers to hesitate in carrying into effect a measure which for any of the reasons adverted to, or for some other cause,

threatened to be ruinous and destructive to the interests committed to their charge, or which, in consequence of untoward circumstances, not foreseen or anticipated, may have become entirely useless and unnecessary.

With so many difficulties in the way ; so many objections urged, some of which are of a formidable character, it is at least a matter of some hesitation, whether the exercise of a sound discretion would warrant the issuing of a writ of mandamus in the case at bar. But, independent of these considerations, it would be a very questionable exercise of a discretionary power, in a case like this, where public officers acting in good faith have deemed it necessary to make material alterations in a contract proposed, to grant an order requiring them to carry out and enforce an old and abandoned contract. It would be far better, and equally answer the ends of justice, to leave the parties, if they have any legal rights, to the remedy which they may have in an action at law for damages.

As a general rule, when a party has an adequate remedy by action for damages, a mandamus should not be allowed. (*Shipley* v. *Mechanics' Bank*, 10 *John.* 484. *Boyce* v. *Russel*, 2 *Cowen*, 444. *The People* v. *President, &c. of Brooklyn*, 1 *Wend.* 318. *Ex parte Lynch*, 2 *Hill*, 45. *Ex parte Fireman's Insurance Co.*, 6 *id.* 243. *The People* v. *Judges of Oneida*, 21 *Wend.* 20.) It has been held in some cases that corporations and ministerial officers may be compelled, by mandamus, to exercise their functions according to law, notwithstanding they may be liable in an action, for a refusal. (*McCullough* v. *The Mayor of Brooklyn*, 23 *Wend.* 458. *People* v. *Steele*, 2 *Barb.* 397.) This doctrine was questioned, however, in *The People* v. *Supervisors of Chenango Co.*, 11 *N. Y. Rep.* 563,) and it is by no means clear that any exception is made against corporations. The writ of mandamus, however, will not issue in a case of *doubtful right*. It will only lie to enforce a *clear* legal right, and when a

remedy at law is wanting or doubtful.   (1 *Kernan,* 543.  13 *Barb.* 444.   10 *.id.* 366.   14 *John.* 416.)

As already suggested, there is considerable question whether the right of the relators is entirely clear.   If it be so, then the remedy by action is equally clear, and it would be needless to allow a summary process to enforce a contract which it has been deemed inexpedient and improper to carry out, instead of leaving the parties to the accustomed mode of redress, by an action in a court of justice.

As I have arrived at the conclusion that in the exercise of a sound discretion a writ of mandamus should not issue, it is not important to examine and consider some other objections urged.

The order appealed from, for the reasons given, must be affirmed, with costs of the appeal.

[NEW YORK. GENERAL TERM, June 3, 1867.  *Leonard, Clerke* and *Miller,* Justices.]