Learned, J.
The relator moves for a mandamus to compel the defendants to admit his children to a certain public school in Albany, near his residence. The defendants refuse to permit his children to attend that school, but are willing to have them attend another public school in the city, affording equal advantages. The other school is farther from the relator’s residence, but there is no evidence that it is not within a convenient distance.
The defendants have raised no question whether it *161 is the relator or his children who are the proper parties to apply for this writ.
It may be well, in the outset, to recall a few principles applicable to the writ of mandamus. It is a prerogative writ, resting to some extent in the discretion of the court to grant or to refuse (Exp. Fleming, 4 Hill, 581; Van Rensselaer v. Sheriff, 1 Cow., 501; People v. Contracting Board, 27 N. Y., 378). It will issue only in a case of clear, not of doubtful right (People v. Croton Aqueduct, 49 Barb., 259; Reeside v. Walker, 11 How. U. S., 272). Generally it will not issue where the relator has a legal remedy by action for damages (49 Barb., 259, supra; People v. Supervisors, 11 N. Y. [1 Kern.], 563; People v. Mayor, 10 Wend., 393). It is the universal rule in respect to all subordinate courts and tribunals, clothed with the exercise of judgment and discretion, that they cannot be compelled by mandamus to decide in any particular way. Their determination is conclusive, unless some mode of review is provided (Howland v. Eldredge, 43 N. Y., 457; Oneida C. P. v. People, 18 Wend., 79).
Not, therefore, in every case where a person is injured by the improper act of public officers can he claim this remedy. The court is to consider whether his right is clear ; whether he has not a legal remedy by action for damages; and whether the officers of whose act he complains have not been clothed by law with some discretion in respect to the subject of their action.
The ground taken by the relator is that, as an inhabitant and a citizen of Albany, he has the absolute right to send his children to that one of the public schools which is near to his residence. Of course, If he has this right, every other citizen of Albany has the same. And it would follow that the distance of each dwelling from a school-house must determine abso *162 lately where the occupant shall send his children, without respect to the rules of the board.
How it is to be observed that in Albany there are no school districts, unless the whole city is one district. In the country, as is well known, there are school districts, and the children residing in each district are entitled to attend the public schools therein. But it was not claimed by the relator that there is any law making a certain part of this city the district belonging to a particular school. I am unable to find any such law. Ho school districts have existed here for many years, so far as I can judge by the statutes.
The schools of Albany are the schools of the whole city. All of them are under one board of public instruction. All of them are supported by the taxes levied upon the whole city. I cannot see, therefore, on what ground an inhabitant of the city can claim the absolute right to select for his children such school as he pleases in defiance of the regulations of the board. The school which is nearest to his residence is no more his than that which is most distant. It is easy to see that a control over this matter would wisely be given to the board.
Accordingly by section 7, chapter 444, Laws of i.866, the board have the control and management of the several public schools. They have the power, and it is their duty, to adopt such rules and regulations for the administration and government of the schools and for the admission of pupils to the various departments therein as they shall determine, with authority at any time to alter and amend the same (See also Laws of 1855, ch. 516). It would seem, therefore, that, by the strongest language, the legislature have intrusted to the discretion and judgment of this board the full control of the public schools, including and specifying the power to adopt regulations for the admission of pupils. In the exercise of this judgment and discre *163 tion the board have adopted a rule by which the children of the relator are admitted to one school and not to another; both affording equal advantages. Whether or not this is a wise rule, I have no right to inquire. The only question is whether such a rule is within the power of the board. If it is, then the court has no right to interfere by mandamus, whether the board exercise the power wisely or not. Either every citizen has the right to select a school for his children unrestricted by the rules of the board, or else the board has the power to make rules on that subject. It seems to me that the law plainly gives them that right. And where the law has entrusted it, there it should remain. The board is better fitted to judge of the wisdom of their rules than the court. Even if the court were of the opinion that the rule were wrong, still, “ there must after all be some discretion left to public officers and a power to do wrong as well as to do right. The court cannot correct all the evils incident to the administration of government ” (27 N. Y., 378).
From these considerations it appears that, at the best, the relator has not that clear and undoubted right which alone warrants a mandamus; and that on the contrary, the action of the board was within, the limits of their discretionary power.
Again, the relator claims that the board have unlawfully excluded his children from the school of his selection. If this is so ; that is, if their act is unlawful, is there anything to prevent him, or his children, from suing the board at law, and from recovering damages for this unlawful act ? (Robinson v. Chamberlain, 34 N. Y., 389.) And if he has that common remedy, then, according to the cases above cited, he cannot, at least as a general rule, have the extraordinary remedy of mandamus. Of course, if the action of the *164 board was not wrongful, he would not be entitled to either remedy.
I have discussed the case thus far without allusion to the reasons why the board refuse to admit the" relator’s children to the school of his selection. Because, if, as it appears, the two schools are equally good, and if the matter is one under the discretion of the board, I suppose their reasons are not a matter of review by mandamus. In fact, the relator is a man of color, and the school opened to his children is a school for colored children, long established in this city under the laws of the State. That which he prefers is a school for white. But I have spoken of his rights just as those of any other citizen. I have shown that, as appears to me, the issuing of a mandamus in this case would necessarily involve the principle that any citizen of Albany could select such school as he pleases, or at least could select that which is nearest to his residence, contrary to the rules of the board, and as a matter of absolute right, and that under our school system here no such absolute right belongs to any citizen.
It is urged, however, on the part of the relator, that this regulation of the board is in violation of the fourteenth amendment of the Constitution of the United States. This prohibits the State from making or enforcing any law which shall abridge the privileges and immunities of citizens, of the United States. There is some reason for believing that the privileges and immunities there referred to are those only which arise under the Constitution of the United States, and not those which arise under State laws. But passing over this point, and even assuming that this rule of the board is to be included in the words “ any law,” what privilege of a citizen is abridged thereby ? Certainly none, unless every citizen has the privilege of choosing to which school, in a city, he will send his children. *165 The relator has equal common school advantages with other citizens. He does not assert that the school which is open to him is not as good as the one which is closed. He does not pretend that there is anything in its position, its pupils, or its teachers, which makes the limitation of his children to that school a practical refusal to them of common school advantages. If the school which is open to his children were materially objectionable, or if it were an improper school for them to attend, a very different question might then arise.
This subject is well discussed in a recent case in Ohio, in which the relator claimed the admission of his children into the school of the district in which he resided. The court there said: “Under the lawful regulation of equal educational privileges the children of each class are required to attend the school provided for them, and to which they are assigned by those having the lawful official control of all. The plaintiff then cannot claim that his privileges are abridged on the grounds of inequality of school advantages for his children. Nor can he dictate where his children shall be instructed, or what teacher shall perform that office, without obtaining privileges not enjoyed by white citizens. Equality of rights does not make the necessity of educating white and colored persons in the same school, any more than it does that of educating children of both sexes in the same school, or require that different grades of scholars be kept in the same school. Any classification which preserves substantially equal school advantages is not prohibited by either the State or federal constitution ; nor would it contravene the provisions of either. There is, then, no ground on which the plaintiff can claim that his rights under the fourteenth amendment have been infringed” (State v. McCann, 21 Ohio, 198). These sound remarks apply still more forcibly in the present *166 case, for the reason, as previously stated, that there is no district in this city with which the relator has special connection.
In conclusion, I add a single suggestion, outside of the case. No public officers discharge their duties more faithfully than this board. Without compensation they give much time and labor to these important interests. In the present matter their purpose is (as they aver) to do that which is best for all concerned. If, therefore, the colored citizens, as a body, wish, on a calm consideration of the question, the discontinuance of the colored school and the admission of their children into other public schools, and are satisfied that such a course will be for the good of their children, their views and wishes will doubtless have great weight with the board in deciding this important matter, over which, in my opinion, they have full control.
Motion for mandamus denied, with ten dollars costs, to be paid by relator.