State *v.* Sneed.

STATE *v.* SNEED.

(*Knoxville.* November 10, 1900.)

1. MANDAMUS. *Granted by this Court to control action of Circuit Judge, when.*

This Court has jurisdiction, by mandamus. to compel a Circuit Judge to vacate his illegal and arbitrary action, taken out of term time, in having a judgment entered as if during term, and appeal granted as of date after close of term, and to compel him to reinstate the case on his docket for such further proceedings as might be desired and appropriate, when such relief is invoked by a party who seeks, but, by the Judge's unwarranted action, is denied any effective review of the case on appeal or writ of error. (*Post, pp. 713–716, 721–728.*)

Constitution construed: Article VI., Section 2.

Cases cited: Miller *v.* Koger, 9 Hum., 236; State *v.* Hall, 3 Cold., 255; State *v.* Elmore, 6 Cold., 528; Whitfield *v.* Greer, 3 Bax., 78; Newman *v.* Justices, 1 Heis., 787; State *v.* Hall., 6 Bax., 7; Alexander *v.* State, 14 Lea, 88; Vanvabry *v.* Staten, 88 Tenn., 334.

2. SAME. *Other remedy does not defeat jurisdiction of this Court.*

The existence of other adequate remedies at law, or in equity, does not defeat or affect the jurisdiction of this Court to issue mandamus to control the action of inferior Courts and Judges in aid of its appellate jurisdiction and as a necessary incident to its effective exercise. (*Post, pp. 728–733.*)

Constitution construed: Article VI., Section 2.

Code construed: § 377, (S.); §.344 (M. & V.).

Cases cited and approved: King *v.* Hampton, 3 Hay., 59; Miller *v.* Conlee, 5 Sneed, 434; Miller *v.* Koger, 9 Hum., 236; Ward *v.* Thomas, 2 Cold., 565; Memphis *v.* Halsey, 12 Heis.. 210; State *v.* Hull, 3 Cold., 255; Ing *v.* Davey, 2 Lea, 276; Vanvabry *v.* Staton, 88 Tenn., 340; State *v.* Hall, 6 Bax., 7; State *v.* Elmore, 6 Cold., 529.

Cited and distinguished: State *v.* Commissiones, 1 Shan. Cases, 490; Whites Creek Co. *v.* Marshall, 2 Bax., 124.

State *v.* Sneed.

3. SAME. *Judge taxed with costs.*

   Where, in a proceeding by mandamus against a Judge of an infe-
   rior Court, it appears that his action has been wholly unwar-
   ranted and arbitrary, as in this case, and manifests a partisan
   spirit on his part, he will be taxed with all the costs of the
   proceeding. (*Post, p. 735.*)

   Cases cited: State *v.* Puckett, 7 Lea, 709; Hawkins *v.* Kercheval,
   10 Lea, 535; Ingersoll *v.* Howard, 1 Heis., 247.

4. NEW TRIAL. *Motion for, not essential, when.*

   Motion for new trial is not essential when a case is tried by the
   Judge without the intervention of a jury. (*Post, pp. 715–743.*)

---

FROM KNOX.

---

Application for mandamus.

J. C. J. WILLIAMS and WEBB & McCLUNG for Relator.

JOUROLMON, WELCKER & HUDSON and WALTER S. ROBERTS for Sneed.

WILKES, J. Upon a former day of the present term of this Court an application for mandamus was disposed of, and a written memorandum was handed down showing the grounds of the · Court's action. This memorandum is in the words and figures following:

State *v.* Sneed.

"State, *ex rel.* John Richards, } Law Docket Knox
  *v.*          County.
Jos. W. Sneed.

"This is an application for mandamus against the Hon. Jos. W. Sneed, Judge of the Circuit Court in and for Knox County.

"Its prayer is to require him to expunge from the minutes of the Court over which he presides an entry of judgment for $65 and costs in the cause of *Horn* v. *Richards,* and if the whole of it cannot properly be expunged, that certain parts of it be expunged so as to show that a new trial was asked for and refused; that an appeal was prayed and granted, to the end that the judgment complained of may be reviewed by this Court.

"The trial Judge answered the alternative writ and set out fully the facts in regard to the judgment as he understood them. While there are some variances between the statements in the petition and the answer to this writ, we think they are not material to the merits of the controversy. We state the facts of the case mainly as given by the learned trial Judge. It appears that he heard the case of *Horn* v. *Richards* without a jury, and announced an opinion that the defendant, Richards, was indebted to Horn $65. No judgment was entered on the minutes. Counsel for Richards thereupon brought the matter before the Court, as he says, upon a motion for a new

trial, and read a statute bearing upon the case. The learned trial Judge states that he did not understand that the application made, or matter presented, was a formal motion for a new trial, but was an effort upon the part of counsel to have the Court change his ruling and render a different judgment. However this may be, and we do not think it is material which is correct, the trial Judge directed the Clerk not to enter the judgment. This was not done publicly, but privately. Counsel for defendant ascertained that the entry was held up by order of the Judge, and made no other effort after applying to the clerk and getting this information. No further action was taken until Monday, September 3, when an appeal was prayed and granted and time given to prepare the bill of exceptions until the 8th of September, and an entry to that effect was made. The bill of exceptions was prepared and agreed to by counsel, and after being changed and interlined was filed by the trial Judge on September 7.

"It appears, however, that the term of the Court in Knox County closed on the 1st of September, and on the 3d, when the entries were made of the judgment and other facts, the Court was by law open in Sevierville, and could not be open in Knoxville. The learned trial Judge thereupon, believing that he could not do any legal and valid business after the time for the adjournment

of the Court, caused an entry to be made giving a judgment *nunc pro tunc* for the $65 and cost, as of date September 1, when the cause was heard by him, but reciting that the prayer for an appeal was not made and granted until September 3, and the extension of time to file a bill of exceptions to the 8th was then made. This left the record in shape, showing that a judgment was entered September 1, when Court was in session, but no appeal was granted or time given to file the bill of exceptions until September 3, when the Court was not and could not be in session.

"Now, the motion for a new trial was not material, as the case was heard by the trial Judge without a jury, and in such cases motion for new trial is not indispensable. Nor was the defendant seriously prejudiced by failing to have his appeal granted, as he could bring up the case, as he has done, by writ of error. But the trouble is that in the present shape of the record defendant has no bill of exceptions which the Court can regard on the hearing of his writ of error. Without intimating where the fault for this state of affairs lies, or, indeed, that any one is to blame, it is evident that the defendant has been deprived of his right to have the decision of the lower Court reviewed in such manner as to present the merits of his controversy. The action of the trial Court, whether we consider the effort

as a consideration of a motion for a new trial or simply as a withholding of the final decision, or taking the case under advisement, led the defendant's counsel to delay his appeal until he could not legally make it, and we are of opinion that all the action of the Court on the 3d of September was void and of no effect, and the entry ordered on that day to be made as of date September 1 was unauthorized and of no effect, and should be stricken out. This being done, the case stands as though no judgment had ever been rendered in the cause.

"It is immaterial whether the trial Judge authorized an entry showing the Court opened on the 3d of September, or that this entry was made by the clerk of his own motion. The fact appears from the record and the answer of the Judge that the entry was ordered to be made after the Court adjourned and to be dated back to a date when it was in session, and this, we think, was a void action on the part of the trial Judge, and could not be permitted to prejudice the defendant in his effort to have his case reviewed.

"The Court directs, therefore, that the judgment, with its recitals which were ordered to be made on the 3d of September and dated as of the 1st of September, be set aside and for nothing held in the Court below, and proper order to that effect will be entered while that Court is in

session. The case will then be reinstated and stand upon the docket of that Court as though no such judgment had ever been entered, and for such further disposition as is proper.

"The writ of error in the case of *Richards* v. *Horn* will be dismissed at the cost of Richards and his surety, inasmuch as there has been no valid final judgment in the case to be reviewed, because of the confused state of the record.

"The cost of the mandamus proceeding will be paid by the defendant to that proceeding.   WILKES, J."

The defendant, Jos. W. Sneed, has now filed a petition to rehear, which has been answered by the counsel for the relator, and the case is before us for reconsideration on this petition and answer.

The defendant states that he filed no brief on the original hearing, because he did not deem one necessary, and he did not realize that he could have any interest, personal or pecuniary, in the decree to be rendered in the cause; that he was busily engaged in holding his Court, and had no time to investigate any authorities bearing on the questions at issue. He continues:

"Since this honorable Court has rendered a decree against your petitioner for costs, not only affecting your petitioner as a judicial officer of the State, but all Judges alike, petitioner feels constrained to present the views that he does why said decree should be reviewed by this honorable

Court. Further, petitioner states that in all his researches, or those of his associate counsel, he has been unable to find any adjudication by any Court taxing a judicial officer with costs."

Continuing, he says in substance that the course pursued by this Court is without authority and contrary to public policy, and should receive the most careful consideration of the Court; that if a Judge is brought before a revising Court to stand on no higher plane than an ordinary litigant, the consequences are so apparent and the lowering of the judicial standard so great that, if the suggestion itself is not sufficient to entitle petitioner to a rehearing on that point alone, it would be unnecessary to present any elaborate arguments on this question.

The petitioner thereupon proceeds to submit some propositions of law which he considers conclusive of the case, and supports the same by elaborate briefs and argument. It will be impossible in a reasonable space to give his presentation verbatim, covering as it does some seventeen pages of typewritten matter. The petitioner has, however, summarized his position in his own language as follows:

"1. We insist that, on principle and especially in view of the particular facts of this case, no action of the lower Court having been invoked, that in taking jurisdiction of this case by man-

damus this honorable Court has exercised original, and not appellate, jurisdiction.

"2. That the writ of mandamus in this case should not issue, even though the relator has no right to appeal or writ of error.

"3. That relator has other Courts and other remedies, which is by all authorities, and particularly our own, admitted to be a conclusive answer when this Court is applied to for a writ.

"4. That your Honors are attempting the exercise of judicial discretion which is the province of the Circuit Judge in the first instance.

"5. Your Honors are demanding of the Circuit Judge to do an illegal act—to assume jurisdiction when he has none in setting aside orders made at a previous term.

"6. Your Honors have allowed the relator's attorney, in his conference with the clerk, to override and annul the solemn action of the Circuit Judge, when said Judge had no knowledge he was being influenced thereby, nor had the information set forth in the petition, and which it was his duty to make known to the Court and ask for its action in term time."

The petition and argument proceeds to set out the provisions of Article 6, Section 2, of the Constitution, defining the jurisdiction of the Supreme Court, and presents the question to the Court whether this Court, in awarding a peremp-

tory mandamus in this case, was exercising appellate or original jurisdiction.

The case presented, in the view of petitioner, is that this Court has ordered the vacating of a final judgment in the Court below in the case of *Horn* v. *Richards,* when that judgment was made by him as Judge of the Circuit Court of Knox County, and was, as he thought, warranted by law. It is objected that the judgment rendered on the first hearing in this Court is not in pursuance of the prayer of the petition for mandamus, and that no application to set aside the judgment complained of was first made in the trial Court, and hence this Court was exercising original jurisdiction.

Upon this double feature of the case it is only necessary to refer to the opinion of the Court handed down on a former day. In that opinion it was correctly stated that the prayer of the petition was that the trial Judge be required to expunge from the minutes of the Court over which he presides an entry of final judgment in the case of *Horn* v. *Richards,* and if the whole of it cannot be expunged, that certain parts of it be expunged so as to show that a new trial was asked for and refused; that an appeal was prayed and granted, to the end that the judgment complained of might be reviewed by this Court. The relief granted upon the petition is that the judgment complained of, with its recitals which

were made on the 3d of September and dated September 1, be set aside and for nothing held in the Court below, and proper order to that effect will be entered while that Court is in session. The case will then be reinstated and stand upon the docket of that Court as though no such judgment had been entered, and for such further disposition as is proper. This is substantially granting the relief prayed for, and the difference consists in a mere substitution of words.

It is said the specific motion to set aside this final judgment was never made in the Court below, but for the first time in this Court; and this is true, but inasmuch as the so-called final judgment was not entered until after the trial Court had adjourned, when no valid order could be made or action taken by that Court, it is plain the relator, Richards, had no opportunity to make such motion. The applications that he did make for appeal, and to have his bill of exceptions properly made part of the record, were refused upon the ground that the Court had adjourned for the term and the trial Court could make no valid order after the adjournment of Court.

But, coming to the question of merit, it is insisted that the Court, in entertaining this application for mandamus and granting relief, was exercising original, and not appellate, jurisdiction. It is proper to note that this point was not

21 P—46

raised in the elaborate answer which the defendant made to the writ of mandamus on the original hearing. That answer and amended answer, with the affidavits in support of it, covered some eighteen pages, and presented the position of the trial Judge very fully.

It is said that the proceeding by mandamus is an original process, and in support of this proposition the Court is referred to High on Extraordinary Legal Remedies, 3d Edition, Sec. 27. That section, as quoted in the petition, no doubt correctly, is in these words:

"The granting of the writ of mandamus is the exercise of an original, and not of an appellate, jurisdiction, the writ itself being an original process. Hence it follows that in those States where the Courts of last resort are devoid of original jurisdiction, and vested with only appellate powers, such Court cannot exercise jurisdiction by mandamus. An exception, however, is recognized when the issuing of the writ is necessary in · aid of the appellate powers of such Courts, and in such cases it is not regarded as an original proceeding, but as one instituted in aid of the appellate jurisdiction possessed by the Court."

The petitioner states that this Court has directed that petitioner shall proceed and retry and redocket this case, and it was not competent for this Court to direct the lower Court to proceed to a hearing, because ·that would have been the

exercising of original, and not appellate, jurisdiction (citing High on Ex. Leg. Rem., Sec. 253). But the petitioner inadvertently misreads the order of this Court. It did not direct that Court to retry the case, but that it should be reinstated and stand upon the docket of that Court as though the void entry had never been made, and for such further disposition as is proper. This Court declined to direct the learned Judge to retry the case or to suggest to him how he should proceed or what further steps he should take.

Mr. High in his work says (Sec. 253): "It (the Supreme Court) may, however, in aid of its appellate jurisdiction, and as a necessary incident to its exercise, issue a mandamus commanding an inferior Court to sign and seal a bill of exceptions in order that the record of the cause of which the Appellate Court has jurisdiction by appeal may be completed, the purpose of the writ in such case being merely to perfect the right of the party appealing."

To the same effect see *Miller* v. *Koger,* 9 Hum., 236; *State* v. *Hull,* 3 Cold., 255; *State* v. *Elmore,* 6 Cold., 255; *Whitfield* v. *Greer,* 3 Bax., 78; *Newman* v. *Justices Scott County,* 1 Heis., 787; *State* v. *Hall,* 6 Bax., 7; *Alexander* v. *State,* 14 Lea, 88; *Vanvabry* v. *Staten,* 88 Tenn., 334; *Ex parte Jordan,* 94 U. S., 248;

*Pettigrew* v. *Washington Co.,* 43 Ark., 33; *People* v. *Canal Appraisers,* 73 N. Y., 443.

See, on the general subject of mandamus, *Dane* v. *Derby,* 89 Am. Dec., 728, 730, 739, 742.

The petition states that this Court has directed the Circuit Court to take jurisdiction and reinstate a case on the docket that has been finally disposed of by that Court as it believed was right. We do not so understand the ruling of this Court, but it proceeded upon the idea that the so-called entry of final judgment, while valid in form, was in reality void because there was no authority or jurisdiction to enter it after the term had expired, and hence the case was still in that Court, and remained there for such disposition as the trial Judge might see proper to make of it. The direction to redocket was not to bring back a case which had been disposed of, but to continue a case on the docket which had not been disposed of, but was still pending. The entry upon the minutes being made after Court adjourned occupies the status of an unauthorized entry made by any third person not connected with the Court, and can have no other effect. It is said in the petition that this Court has said, in effect, that the relator was deprived of any appeal and that he was not entitled to prosecute a writ of error, and the same has been dismissed. It would be more accurate to say that the holding of this Court is that, by the unau-

State *v.* Sneed.

thorized action taken, the defendant, Richards, was prevented from so prosecuting any appeal or writ of error as to have this Court pass upon the merits of the controversy, and the writ of mandamus is issued in order that this impediment to the relator's right of appeal may be removed and in aid of its appellate jurisdiction. It is true, as petitioner states, that this Court cannot by mandamus seek to correct errors of judgment of subordinate tribunals when acting within their jurisdiction, even though the decision may bear harshly upon a relator. It will not be used to perform the office of an appeal or writ of error to review the judicial action of an inferior Court. But this by no means goes to the extent of saying that it may not be used when the right of appeal is cut off by the unauthorized entry of a final judgment when the trial Judge had no jurisdiction or power to order such entry or to allow it upon the minutes of his Court. When such void decree or judgment stands in the way of a suitor and prevents him from having his case reviewed in an Appellate Court upon its merits, this Court has the jurisdiction to direct that the void entry shall be annulled and set aside, and that proper entries to that effect be made upon the minutes of the trial Court; otherwise the void judgment would stand as having the sanction of a judicial act, which it has not and never had.

Nor is this an attempt to exercise a control

over the discretion of the trial Judge. The learned trial Judge, in the opinion of this Court, had no discretion, nor even jurisdiction or power to order this entry on his minutes after his Court had adjourned. It was not a matter of discretion in any view of the case. It was the absence of power, the want of jurisdiction, the doing of a void act, which this Court was dealing with. Neither was this Court, in granting the mandamus, exercising the function of reviewing the merits of the controversy. It made no adjudication of the merits; it made no reference to them. Its order was alone directed to having an entry which was void, though apparently regular, and which should never have been entered upon the minutes of the Court, canceled, so that the case could be finally disposed of in such manner as to preserve the defendant's right to have it reviewed.

The case resolves itself on its final analysis into this, that the disposition of the case made by Jos. W. Sneed was made by him as an individual out of Court, and was extra judicial, and the action taken by him and the entry made upon the minutes at his direction had no more force and validity than if it had been made by a third person not connected with the Court. The relator could not have an appeal or other process of review from such an entry of judgment. In the exercise of its appellate jurisdiction,

this Court can compel the trial Judge, while acting as a Judge, to proceed in a judicial manner to expunge from the minutes this unauthorized entry, so that when the case is finally disposed of in the Court below it may be done at such time and in such manner that either party may have an appropriate remedy by review. This extra judicial entry stands in the way of exercising the appellate jurisdiction of this Court, and it will be removed as an obstruction to the proper exercise of that jurisdiction. There is in the order of this Court no particular direction to pronounce a particular judgment, and nothing that in any way interferes with the function or discretion of the trial Judge while acting judicially, but it simply removes from the minutes his action as an individual, as though it had never occurred, leaving the case to be proceeded with in the Court below as though the void judgment had never been entered.

It is said that this Court has no power to direct that this judgment be canceled and set aside at a term subsequent to that at which it was rendered. But this argument is not sound, and, in addition, presupposes that the entry of judgment is upon the minutes by authority, while the holding of this Court is that there was no warrant for such entry whatever, and the minutes should stand as though no such entry had ever been made or had been made by some third per-

son. It is not the case of a valid final judg-
ment rendered judicially, but an entry made by
the petitioner as an individual, and not as Judge.

It is insisted that a proceeding by mandamus
will not be allowed when there is some other
adequate and specific remedy for the party. What
is meant by an adequate and specific remedy is
not so clear, but the weight of authority is that
it must be a complete legal remedy that will
afford the relief to which the party is entitled.

This is the holding of this Court in *State* v.
*Commissioners,* 1 Shannon's Cases, 490, and in
*White's Creek Co.* v. *Marshall,* 2 Bax., 124. It
is the statement of the author in High on Ex-
traordinary Legal Remedies, Secs. 15, 16, 17, 18,
19, and many other sections. And the existence
of possible equitable remedies does not affect the
jurisdiction of Courts of law (Sec. 20), and the
Courts have held that by a legal remedy such
as will bar relief by mandamus is meant a rem-
edy at law, as distinguished from a remedy in
equity, and that the mere existence of an equita-
ble remedy is not of itself a conclusive objection
to the exercise of the jurisdiction, although it
may, and should, influence the Court in the ex-
ercise of its discretion in the particular case.
High on Extraordinary Legal Remedies, sec. 20;
*People* v. *Mayor of New York,* 10 Wend., 395;
Vol. 13 Enc. of Pl. & Pr., p. 498; *Common-
wealth* v. *Commissioners of Alleghany,* 32 Pa. St.,

218; *Ely* v. *Red Bank School District,* 87 Cal., 167.

The principle involved is that, whenever a legal right exists the party is entitled to a legal remedy, and when there is no other legal remedy, mandamus will lie. *People* v. *Mayor of New York,* 10 Wend., 395.

The party who has a plain legal right, and none other, is entitled to the writ, and is also entitled to a legal remedy, and cannot be required to abandon the legal forum in which his rights are being adjudicated and seek for relief from a Court of Equity. If a final judgment deprives him of a plain legal right, and he cannot correct it by appeal or writ of error or some other appropriate mode of review because of some improper act of the Court below, he is entitled to have the impediment removed by a writ of mandamus. It will not be refused because the party may have a remedy by action for damages. 14 Am. & Eng. Enc. Law, 97, and cases cited. Nor that the judgment may be enjoined. *Idem,* p. 102; High on Extraordinary Legal Remedies, sec. 17. If a judgment has been erroneously entered, mandamus will lie to change the record entry. 14 Am. & Eng. Enc. Law, 112*c*. Or to compel the inferior Court to change its docket entries to conform to the law and facts. *Idem.,* p. 116*h*. Or to compel the grant of an appeal. *Idem.,* p. 120-3.

What effect would an injunction have? The relator as to this matter has no contest with his antagonist, Horn. It is wholly with the trial Judge, and his complaint · is not against the Judge for his judicial action, but for action that is extra judicial and that of an individual, but which has the form and semblance of a valid entry, and is attempted to be executed and enforced as a judicial act. It is clear that a Court of Chancery could not expunge from the minutes of the Circuit Court any entry upon it, and yet the relator is clearly entitled to have this done. Suppose an injunction was brought and the judgment declared void, so that it could not be executed, and Horn should thereupon appear in the Circuit Court and demand another trial. The Circuit Judge could reply that the case had been settled by a former judgment, that his record so showed, and that a co-ordinate Court could not wipe out entries upon his record. If Horn should dismiss his suit and bring another he would be met by the same difficulty and obstacle. It is not like the case of *Woodin* v. *Daniel,* 16 Lea, 156, because in that case the Supreme Court never had jurisdiction of the cause or parties, and the decree of the Chancellor holding the judgment of the Supreme Court void settled the entire matter; but in the case at bar, the Circuit Court had and still has jurisdiction of the cause and parties and has the power, jurisdiction, and right

to proceed to judgment as if the entry had never been made. The relator had a right to have a judgment judicially rendered in the Court below and to have it reviewed in the Appellate Court, and to have his rights determined and an end of litigation in the suit then pending, and he cannot be required to seek relief in a Chancery Court of equal power with the Circuit Court, and which at best could give but partial relief and with a probability, if not a certainty, of conflict of authority. The Court of Chancery could not vacate or expunge the void entry on the Circuit Court minutes, and at most could only enjoin the execution and declare the judgment void. In expunging the entry from the minutes of the Circuit Court, we do not mean the mutilation of the record of that Court, but the entry of such orders as will show the previous entry to be void and of no effect.

Petitioner says in his reply brief "that, whatever may be the authorities elsewhere, our own authority, the case of White's Creek Turnpike Co. v. Marshall, 2 Bax., 104, denies the right to issue the writ of mandamus when there is any Court or any remedy available to the relator, which of course, he says, includes a Court of Equity as well as a Court of Law. A more careful reading of the case by petitioner would have shown him that this language in so many words is not used in the opinion in that case,

but words in substance the same are used on page 121, but it is not used in stating when a mandamus will be granted, but when a resort to a Court of Equity may be had. See p. 121, bottom of page. And a little further examination would have shown him that the learned Judge in the opinion, in speaking of when mandamus will be granted, says: "Neither will the writ be granted if the relator has any other adequate legal remedy" which is in accord with all the authorities we have cited and expressly excludes the idea of petitioner of any remedy in any Court.

In addition, petitioner, on a re-examination of that case, will find while the Court discusses the subject of mandamus it puts its decision on entirely different grounds. See syllabus, p. 105, sec. 7. The question involved in that case was, not whether mandamus would lie, but whether the suit could be maintained in chancery, and one of the reasons given why it would lie was because mandamus would not. But all of this discussion in regard to other remedies is wholly inapplicable to this case and to the grant of mandamus by this Court.

These authorities apply to inferior Courts when called upon to issue mandamus, and the rule in these Courts is not to issue mandamus when there is any other adequate legal remedy. But this Court, in aid of its appellate jurisdiction, has used the remedy of mandamus from its founda-

tion. Indeed, it and the writ of error, certiorari, and supersedeas are possibly the only remedies this Court does or can use in aid of its appellate jurisdiction, and in aid of that appellate jurisdiction it has the power to grant the writ without regard to other remedies. Upon a suggestion of a diminution of a record, this Court every day orders the Clerk below to send up a perfect transcript, and this, while called a certiorari, is but one form of a mandamus to a ministerial officer in aid of its appellate jurisdiction. So, likewise, when a judicial officer does an act which he has no power to do, or refuses to do an act which the law requires him to do, and the right of the litigant to an appeal or review is cut off or embarrassed thereby, this Court can and always does remove the impediment by setting aside the unauthorized illegal act of the trial Judge or by compelling him to do that which the law requires him to do.

The authorities are so numerous that it would be useless to cite them all, and we only cite Constitution, Art. 6, sec. 2; Shannon, sec. 1396; Shannon, sec. 377; *King* v. *Hampton,* 3 Hay., 59; *Miller* v. *Conlee,* 5 Sneed, 434; *Miller* v. *Koger,* 9 Hum., 236; *Ward* v. *Thomas,* 2 Cold., 565; *Memphis* v. *Halsey,* 12 Heis., 210; *State* v. *Hall,* 3 Cold., 255; *Inge* v. *Davey,* 2 Lea, 276; *VanVabry* v. *Staten,* 4 Pick., 340; *State* v. *Hall,* 6 Bax., 7; *State* v. *Elmore,* 6 Cold., 529.

The petition and argument complain that the attorney of the relator obtained information from the Clerk that the trial Judge had ordered the entry of judgment in *Horn* v. *Richards* to be withheld from the minutes, and the insistence is that the clerk is a mere ministerial officer, and the counsel had no right to resort to him for information or to be influenced by it in his actions, but that the counsel should have obtained all his information in open Court. It will be noted that the direction of the Court to withhold the entry given by the trial Judge was not given in open Court, but privately to the clerk. The clerk is the keeper of the minutes. He it is who makes the entries of judgments upon the minutes, and we can see no impropriety in counsel applying to the clerk to know if the entry in his case had been made, to the end that he might pray an appeal or take such further steps as might be necessary, and when told by the clerk that the trial Judge had ordered the entry to be withheld, it was not improper, but the exercise of proper respect to the trial Judge, to await his convenience to remove the injunction from the clerk and allow the entry to be made. Counsel would have been considered importunate in pressing the Judge to have an entry made when for any reason he deemed it proper to be temporarily withheld. We can see no bad faith in counsel in this feature of the case, and no rea-

State *v.* Sneed.

son why he or his client should be taxed with costs or be made to suffer any prejudice in the matter. So long as the entry was withheld on the order of the trial Judge, the defendant, Richards, or his counsel in that case could not pray an appeal or take any steps, and before the trial Judge had removed the injunction which he had privately laid on the clerk, and permitted the entry to be made, the Court had adjourned, when no valid entry could be ordered or made, and no opportunity could be had for appeal or other adequate proceeding to review.

The petitioner says that in all his reasearches and those of his associate counsel he has been unable to find any adjudication of any Court taxing a judicial officer with cost.

We have had but limited time and opportunity to examine the question, but we have with the means at hand been able to find the following cases holding that rule in other States: *Ballou* v. *Smith,* 31 N. H., 413; *Minich* v. *Rascum,* 12 P. Co. Rep., 508; *Kelly* v. *Simpson,* 79 Mich., 392; *Evans* v. *Thomas,* 32 Kans., 489; *Burgtorp* v. *Bentley,* 27 Ore., 268.

We find a number of cases in Connecticut, Utah, and Washington holding a different view. The Courts of New York and Michigan appear to vacillate with the general rule, not so much against the right as against the propriety and practice.

Petitioner has cited us to the case of *The Judges* v. *The People,* 18 Wend., 79, in which the right to tax the costs and assess a fine against the Judge was conceded to be given by statute in case the relator was successful, and this was referred to as a reason why the discretion of an inferior Court should not be interfered with. No one contends that the discretion of an inferior Judge in a judicial matter can be interfered with, nor can he be required to render any particular adjudication or render any specified judgment.

Upon the question of costs in mandamus proceedings the petitioner might have cited another case in the same volume, *People* v. *N. Y. C. P.,* 18 Wend., 434, in which the Court held that costs would be awarded against the Judge upon the idea that he would be presumed to be indemnified by the party in interest; and a little further examination would have disclosed that in *Hecox* v. *Ellis,* 19 Wend., 157, the case in 18 Wend., 534, was criticized as adopting a bad policy. So the petitioner might have found in *People* v. *Littlejohn,* 11 Mich., 60, the Court held that it was not proper to tax judicial officers with costs in mandamus proceedings, but in *Kelly* v. *Simpson,* 79 Mich., 392, the contrary was held. The real difference in the cases rests upon the question whether the Judge was acting judicially but improperly, or was improperly re-

fusing to act judicially, or whether he was acting extra judicially and as an individual, or when the Judge had become a partisan in the contro-. versy. In the former case costs are not taxed against him; in the latter cases they are.

But the case of *People* v. *N. Y. C. P.,* 18 Wend., 534, is so directly in point in this case, that we feel constrained to state the facts and ruling in that case more fully just at this point.

In that case, the Court of Common Pleas gave judgment for the plaintiff and at the same time allowed him to amend his declaration so as to cure a fatal defect, but refused to allow the defendant to plead to the amended declaration, and a mandamus was awarded directing the Judge of the Court of Common Pleas either to vacate so much of his order as gave the plaintiff leave to amend or so much thereof as refused to allow the defendant to plead. It will be noticed that the mandamus in that case issued to correct a judicial proceeding, while the present is to correct an individual proceeding. The Court held that the plaintiff could not be allowed to amend, and the defendant refused permission to plead, because he was thereby being deprived of his right of review in an appellate Court, a result exactly the same as in this case.

But we are not without authority in our own State upon the matter of costs. The case of the *State* v. *Puckett,* 7 Lea, 709, was a mandamus

21 P—47

against a County Judge who undertook to revise a bill of costs which had been properly adjudged against the county, taxed, examined, and certified according to law. It was held by this Court that his action was unauthorized and void, and the Court awarded the mandamus and said as to costs: "The Court might charge the defendant individually with the cost for the violation of his duty (but his term of office had expired), and inasmuch as there can be no doubt of the good faith of the Judge, and that he was contesting the relator's right for the benefit of the county, the county was taxed with the cost. The County Judge, during the pendency of the proceeding, had gone out of office, and this was treated as an important feature in the case.

The case of *Hawkins* v. *Kercheval et al.,* 10 Lea, 525, was a mandamus against the Mayor and Police Commissioners of the city of Nashville. The Court held that they were a quasi judicial tribunal, whose functions and duties in the first instance could not be performed by another. They had improperly removed a policeman because he sued the city. The Court issued a mandamus to the Board and taxed it with the costs, and held also that injunction was not the proper remedy, as it was not as effectual as a mandamus proceeding, and the proceeding was treated as a mandamus, although it was filed as an injunction bill.

State *v.* Sneed.

The case of *Ingersoll* v. *Howard,* reported in 1 Heis., 247, was a mandamus proceeding against the Judge of the first Judicial Criminal District of Tennessee, the Hon. A. W. Howard, upon a state of facts which presents questions somewhat similar in priciple to this case. In that case the trial Judge, A. W. Howard, ordered the clerk to destroy the old roll of attorneys authorized and admitted to practice in his Court, and make a new one, and to enter the name of no attorney thereon who had not complied with the rule of the Court, made in pursuance of the Act of September 10, 1868, the substance of which was that no atorney who had belonged to the Kuklux Klan should be permitted to practice in the Courts of this State.

In obedience to the order of the Court several names of attorneys were stricken from the roll, and among the rest that of H. H. Ingersoll, who had been admitted and had been practicing for six months previous in that Court. Mr. Ingersoll stated to the Court, in open Court, that he was not obnoxious to the provision of the Act, that he was opposed to the Kuklux Klan and all other secret political organizations in Tennessee and the United States, and he asked the privilege of being heard upon the rule in behalf of himself and his brother attorneys. This was refused by the learned Judge. Mr. Ingersoll then stated that there was a wide difference of opinion among the

Judges of the State as to the proper construction of the Act, and he desired to obtain the opinion of the Supreme Court upon it, and asked to have an entry made of record that he might be allowed to practice without taking the oath required by the order, and that the presiding Judge would pass upon his motion, so that if adverse to him he might appeal to the Supreme Court. The Judge thereupon refused to enter the motion and fined Mr. Ingersoll for contempt, and ordered him to his seat, saying that he had no right as an attorney or party to be heard in that Court. Mr. Ingersoll having been silenced, though not subdued, procured another atorney not under the ban to renew the motion, and the Judge again refused it, and threatened to fine that attorney also, and stated that he would not permit the correctness of that rule to be questioned, nor would he permit an entry of record from which an appeal could be taken. He also refused to sign any bill of exceptions setting out the proceedings. Mr. Ingersoll then presented his petition for mandamus to one of the Judges of this Court and an alternative writ issued to have the Judge spread on the minutes the proceedings, so that the same might be reviewed in this Court. Judge Howard entered his appearance and filed an answer setting out at great length his reasons for adopting the rule and for refusing to per-

mit the petitioner's motion to be entered of record.

The answer went on to state, by way of explanation as to why he refused to allow petitioner's motion, and the proceedings to be entered of record as follows:

"To say that all the rules of the Circuit, Chancery, and Criminal Courts made for their own protection and for the dispatch of their own business and in accordance with the written law, are subject to revision in the Supreme Court, whenever any captious attorney sees proper to make a question upon them and carry them up to the Supreme Court, is just to destroy the inherent powers of the inferior tribunals and take from them all their dignity and all their rights of protecting themselves."

After filing his answer, Judge Howard permitted the proceedings to be spread of record and granted an appeal to Mr. Ingersoll.

The Court held that it was a proper case for writ of mandamus, but inasmuch as the record had been made and the case brought up by appeal and the Court itself had been abolished, the writ need not in fact be issued. It was held that the Court would not permit a trial Judge to refuse to make record of proceedings before him so as to prevent their review and revisal in this Court, and that such mode of preserving the inherent powers of inferior tribunals and pre-

serving their dignity and protecting themselves was altogether novel and unsupported by law.

After considering the questions at some length the Court concluded that the Judge had no right to make or enforce the rule against Mr. Ingersoll, and the relief he asked for was granted to him and Judge Howard was taxed with the costs.

Now, in that case the refusal of the Judge of the Court below to have the proceedings spread upon the minutes so that an appeal could be had was the ground of mandamus. In the present case there was an entry made after the Court adjourned purporting to render a final judgment against Richards and a refusal to allow other entries to enable him to appeal. The result was the same in both cases—that is, the relator was prevented by the action of the Judge from having any opportunity to have his action properly reviewed, and the Court in that case, as in this, in aid of its appellate jurisdiction, issued a mandamus to remove the impediments in the way of its exercise of appellate functions.

It is proper to remark that the Ingersoll case is much stronger authority on the subject of the jurisdiction of this Court to grant mandamus than is the present, inasmuch as the petitioner, Ingersoll, in that case had no proceeding to review the action of the lower Court pending of any kind, but was asking the writ in the absence of any pending appeal or writ of error, while

here the relator, Richards, did have a writ of error pending, and the mandamus was sought in aid of that proceeding, and in order that it might be brought properly before the appellate Court. The Court could see that the writ of error could not bring the merits of the case before this Court because of the unauthorized action of the defendant and the apparently regular but illegal entries on the minutes, and in aid of its appellate jurisdiction it issued the writ so as to enable the relator to properly prosecute his writ of error.

But returning to the matter of costs. It is evident that the costs of this proceeding should not be adjudged against the State in any event, nor in view of the relief granted the relator, should it be taxed to him, and the only question presented is whether the clerks and officers shall be required to do the services performed in the case, or whether it shall be taxed to the defendant. Now, if the Court could see that the disposition of this case involved the review of any judicial act of the petitioner—that is, an act done by him in term time and in a judicial manner, the insistence of defendant that he should not be taxed with costs would be tenable, but when the controversy involves an act of the petitioner as an individual out of Court and when it was not in session, then he is amenable to cost as well as any other individual litigant.

The order of this Court is to the Hon. J. W. Sneed, as Judge of the Court, to enter a judgment setting aside an unwarranted act and the entry thereof upon the minutes of his Court by J. W. Sneed as an individual, so that he, as Judge, may proceed in a judicial manner to dispose of a case pending upon his docket and which in our view has not been finally disposed of. It is proper to add that all the questions of law now presented might have been presented on the original hearing, and especially should those have been presented which questioned the jurisdiction of this Court to entertain the mandamus proceeding.

We see no reason for setting aside our former action in this matter, and the petition to rehear is denied and dismissed.